Nicolas C. Wilde
Federal Bar No.: UT15768
Texas Bar Number: 24129400
Law Office of Nicolas C. Wilde LLC
32 West 200 South PMB # 123
Salt Lake City, Utah 84101
Telephone: (801) 949-3088
Email: nick@ncwildelaw.com

Cesar E. Amador
Federal Bar No.: 3341377
Texas Bar Number: 24105367
Cesar A. Amador
Federal Bar No.: 8966
Texas Bar Number: 01136040
Amador Law Firm
2406 Thors Hammer Blvd.
Brownsville, Texas 78526
Telephone: (832-757-1210)
Email: amador@amadorfirm.com
*Attorneys for Plaintiffs*

United States Courts
Southern District of Texas
FILED

*July 31, 2023*

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS: BROWNSVILLE DIVISION**

| | |
|---|---|
| Ignacia Carmona, individually, as the Independent Administrator (*pending court approval*) for the Estate of Veronica Peranez Carmona, and as the next friend for (1) G.H., (2) V.A.H., (3) R.P., (4) E.P., (5) R.C.P., (6) J.D.P., and (7) C.I.P.<br><br>        Plaintiffs,<br><br>v.<br><br>The City of Brownsville; Jesus Olvera, *in His Individual and Official Capacity*; Pedro Dominguez, *in His Individual and Official Capacity*; and John Doe Defendants 1–15 | **FIRST AMENDED COMPLAINT**<br><br>Case No. 1:23-cv-00084<br><br>District Judge Fernando Rodriguez Jr.<br><br>Magistrate Judge Karen Betancourt<br><br>Jury Trial Demanded |

Plaintiff Ignacia Carmona ("Ignacia"), hereby alleges as follows against Defendants (1) the City of Brownsville ("the City"); (2) Jesus Olvera ("Olvera"), in his individual and official

capacity; (3) Pedro Dominguez, ("Dominguez") in his individual and official capacity; and (4) John Doe defendants 1–15 whose identities are not yet known to Ignacia.

## I.      THE PARTIES

1.  Ignacia is a natural person who resides and is domiciled in Brownsville, Texas. Ignacia was Veronica Peranez Carmona's ("Veronica") legal and biological mother. Ignacia sues in (1) her individual capacity; (2) as the presumed Administratrix of the Estate of Veronica Peranez Carmona; and (3) as next friend of seven minor children (the "Minor Children") born to Veronica.

2.  Ignacia, as Veronica's mother, sues in her individual capacity. Ignacia seeks all wrongful death damages available to her.

3.  Ignacia also sues as the presumed independent administrator. Ignacia is seeking to be named as the independent administrator of Veronica's estate and is waiting for the probate court to resolve that effort. *See* Case Number 2022-CPC-00239, *In the Estate of Veronica Peranez Carmona, Deceased,* filed in the County Court at Law No. 4 of Cameron County, Texas. Ignacia, when asserting claims in this lawsuit as the independent administrator, does so in that capacity on behalf of herself and on behalf of the Minor Children—together both wrongful death beneficiaries. Ignacia seeks all wrongful death damages available to herself and to the Minor Children—again, both wrongful death beneficiaries. Ignacia is asserting claims on behalf of the estate and on behalf of the Minor Children—as Veronica's heirs. Ignacia seeks all survival damages and wrongful death damages available to the estate and Minor Children, as heirs.

4.  Ignacia also sues as next friend of the Minor Children— (1) G.H., (2) V.A.H., (3) R.P., (4) E.P., (5) R.C.P., (6) J.D.P., and (7) C.I.P. All seven minor children currently live with

Ignacia in Brownsville and she cares for them. As next friend of the Minor Children, Ignacia asserts claims on behalf of and seeks all survival damages and wrongful death damages available to the Minor Children as Veronica's heirs.

5. The City is a municipality organized under the laws of the State of Texas.

6. At the time relevant to this Complaint, Olvera was a Brownsville City police officer.

7. On information and belief, Olvera resides and is domiciled in Texas.

8. At the time relevant to this Complaint, Dominguez was a Brownsville City police officer.

9. On information and belief, Dominguez resides and is domiciled in Texas.

10. John Doe Defendants 1–15 are jail guards employed or formerly employed at the City of Brownsville or are other Brownsville employees or former employees who were involved in Veronica's death. The identities of John Doe Defendants 1–15 are presently unknown to Ignacia.

## II.    JURISDICTION AND VENUE

11. This civil action (the "Action") arises under the laws of the United States (42 U.S.C. Section 1983 and the Fourteenth Amendment). The above-entitled Court therefore has jurisdiction over the subject matter of the federal law claims in the Action pursuant to 28 U.S.C. § 1331 because they arise under the Constitution and laws of the United States of America.

12. The Court can, and should, exercise personal jurisdiction over the City because the City, as a municipality organized under the laws of the State of Texas, has significant contacts with Texas.

13. The Court can, and should, exercise personal jurisdiction over Olvera and Dominguez because they have sufficient contacts with Texas.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

### III.  FACTUAL BACKGROUND

15. Veronica Carmona was born on July 21, 1988, and was a longtime resident of Brownsville, Texas.

16. She was a daughter.

17. She was a sister.

18. And she was a mother to the Minor Children.

19. Like all humans, she was not without her faults. But she did not deserve to be treated with deliberate indifference and wanton disregard for her serious medical needs.

20. As explained below, (1) Olvera, (2) Dominguez, (3) the City of Brownsville through the Brownsville Police Department and the Brownsville City Jail, and (4) John Doe Defendants 1–15 violated Veronica's Fourteenth Amendment rights under the United States Constitution.

_The White Chevy Suburban Crashes into Multiple Objects_

21. On information and belief, in the summer of 2021, during the early evening hours, the Brownsville Police Department received multiple calls regarding a reckless driver of a white Chevy Suburban.

22. On information and belief, after receiving these initial calls, the white Chevy Suburban crashed into a traffic sign.

23. On information and belief, the white Chevy Suburban then turned into a parking lot and crashed into an unoccupied parked vehicle.

24. On information and belief, the white Chevy Suburban then exited the parking lot.

25. On information and belief, the white Chevy Suburban later crashed into a vehicle that was stopped at a traffic light.

26. On information and belief, the white Chevy Suburban later entered the expressway, exited the expressway, and then crashed into an apartment complex.

27. On information and belief, the apartment complex was a sturdy brick building.

28. On information and belief, as a result of the white Chevy Suburban crashing into the brick apartment complex, the vehicle's airbags deployed.

29. The vehicle's collision with the apartment complex was very severe.

30. Any reasonably trained officer arriving on the scene would have known to seek immediate medical attention for any occupants of the vehicle.

31. Unfortunately, Veronica was the driver of the white Chevy Suburban.

32. Unfortunately, on information and belief, Veronica may have been under the influence of alcohol and cocaine.

33. As explained below, on information and belief, the City of Brownsville, Olvera, Dominguez, and John Doe Defendants 1–15 did not seek or provide medical care for Veronica—despite her need for medical attention being obvious.

### *Even a Layman Is Aware of the Risk of Internal Bleeding from a Car Crash*

34. It is widely known that the liver is the largest internal organ of the human body.

35. It is widely known that the liver is vulnerable to injury in a car crash.

36. It is widely known that during a vehicle collision, the force of the impact can cause the liver to be compressed against the spine or other rigid structures, resulting in lacerations or tears.

37. It is widely known that liver lacerations can be life threatening due to significant internal bleeding.

38. A layperson knows that car crashes pose a high degree of risk of internal bleeding to the occupants of the vehicle involved in a crash.

39. On information and belief, Olvera has worked at the Brownsville Police Department since 2008. Thus, in 2021, Olvera had approximately thirteen years of experience as an officer.

40. On information and belief, Olvera has worked for many years as a patrolman.

41. On information and belief, one of Olvera's duties as a patrolman is to respond to traffic accidents, enforce traffic laws, and investigate traffic accidents.

42. Based on this experience, Olvera was aware of the risk of internal bleeding from a car crash.

43. On information and belief, Olvera and Dominguez likely attended police academy training. During this training, they likely learned that they—when responding to car crashes—have a responsibility to act in good faith to provide emergency medical services to those occupants of vehicles involved in car crashes. At this police academy training, Olvera and Dominguez very likely learned that they should have conducted a head-to-toe assessment for people in Veronica's situation. And they would have very likely learned to recognize appropriate first aid measures for internal bleeding—including calling EMS or taking victims to a hospital where needed.

44. Ignacia will learn through discovery how much experience Dominguez and John Doe Defendants 1–15 had.

*The Vehicle Collisions Resulted in Lacerations to Veronica's Liver*

45. As a result of the vehicle collisions, Veronica suffered a number of severe injuries.

46. Veronica suffered abrasions on her upper right arm and right forearm.

47. Veronica suffered a contusion on her right hand.

48. She suffered an abrasion on her right thigh.

49. On information and belief, she suffered a laceration on the right heel.

50. She suffered a contusion on her left thigh.

51. She also suffered an abrasion on her left foot.

52. On information and belief, all of the injuries just described that were not covered by clothing would have been visible to any responding officers.

53. On information and belief, apart from these visible injuries, Veronica also suffered a much more severe injury: multiple lacerations to her liver.

*Olvera and Dominguez Arrive on the Scene*

54. On information and belief, Olvera and Dominguez arrived at the scene of the crash approximately two minutes after the white Chevy Suburban crashed into the apartment complex.

55. On information and belief, when Olvera and Dominguez arrived, they were aware that the white Chevy Suburban had been involved in collisions other than the collision with the apartment complex.

56. On information and belief, when Olvera and Dominguez arrived, they observed that the white Chevy Suburban's airbags had deployed.

57. On information and belief, based on Veronica's liver lacerations and obvious abrasions and contusions, it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain.

58. On information and belief, two minutes after Olvera and Dominguez arrived, they placed Veronica in handcuffs and placed her in the backseat of a police vehicle.

59. On information and belief, despite knowing that Veronica had been involved in a severe vehicle collision, Olvera and Dominguez did not wait for any paramedics to arrive to examine Veronica.

60. On information and belief, rather than taking Veronica to a hospital, Olvera and Dominguez instead took Veronica directly to the Brownsville City Jail.

*The Texas Commission on Jail Standards*

61. "The Texas Legislature created the Commission on Jail Standards in 1975 to implement a declared state policy that all county jail facilities conform to minimum standards of construction, maintenance and operation." 37 Tex. Admin. Code § 251.1.

62. "In 1983, the Texas Legislature expanded the jurisdiction of the commission to include county and municipal jails operated under vendor contract." *Id*.

63. The Texas Commission on Jail Standards requires the operator of each facility to provide "medical, mental, and dental services in accordance with the approved **health services plan**." 37 Tex. Admin. Code § 273.1. (bold added). "These services may include, but shall not be limited to, the services of a licensed physician, professional and allied health personnel, hospital, or similar services." *Id*.

64. Indeed, the Texas Commission on Jail Standards requires each facility to "have and implement a **written plan**" "for inmate medical, mental, and dental services." 37 Tex. Admin. Code § 273.2 (bold added). The written plan requires facilities to "provide procedures for referral for medical" services and requires facilities to "provide procedures for efficient and prompt care for acute and emergency situations." 37 Tex. Admin. Code § 273.2(2, 4).

65. The Texas Commission on Jail Standards also requires each facility to "provide procedures that shall give prisoners the ability to access a health professional at the jail or through a telehealth service 24 hours a day or, if a health professional is unavailable at the jail or through a telehealth service, provide for a prisoner to be transported to access a health professional . . . ." 37 Tex. Admin. Code § 273.2(14).

66. The Texas Commission on Jail Standards requires "[t]he health services plan" to "include procedures for the maintenance of a separate health record on each inmate." 37 Tex. Admin. Code § 273.4. "The record **shall** include a **health screening procedure** administered by health personnel or by a trained booking officer upon the admission of the inmate to the facility and **shall** cover, but shall not be limited to," certain items, including "health history," "current illnesses," "behavioral observation, including state of consciousness and mental status," and, importantly here, an "inventory of body deformities, ease of movement, condition of body orifices, and presence of lice and vermin." 37 Tex. Admin. Code § 273.49(a)(1–6.)

67. The Texas Commission on Jail Standards also provides that observation of inmates "shall be performed at least every 30 minutes in areas where inmates known to be . . . potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined." 37 Tex. Admin. Code § 275.1.

*The Brownsville City Jail Relies on the Texas Commission on Jail Standards as a "Base"*

68. On information and belief, an agent of the Brownsville City Jail has previously taken the position that the Texas Commission on Jail Standards was not binding on the Brownsville City Jail.

69. But, on information and belief, the Brownsville City Jail has previously relied on the Texas Commission on Jail Standards as a "base," from which to operate, and has previously tried to follow as many of the rules and regulations as closely as they could.

70. On information and belief, the Brownsville City Jail has previously relied on the written Jail Procedures Manual for the City of Brownsville to train its jailers.

71. A previous version of the Jail Procedures Manual for the City of Brownsville made clear that the health and well-being of inmates/prisoners in the Brownsville City Jail is the sole responsibility of the City of Brownsville.

72. A previous version of the Jail Procedures Manual for the City of Brownsville also made clear that the on-duty jailer was required to observe each inmate/prisoner at least every twenty minutes.

73. A previous version of the Jail Procedures Manual for the City of Brownsville also suggested that observations of inmates/prisoners should be more frequent than every twenty minutes for those inmates/prisoners who were potentially suicidal.

74. A previous version of the Jail Procedures Manual for the City of Brownsville also required observations to be recorded in the jailer's logbook.

*Olvera Takes Veronica to the Brownsville City Jail*

75. On information and belief, Veronica was placed in Olvera's police vehicle and taken to the Brownsville City Jail.

76. During the car ride to the Brownsville City Jail, Veronica exhibited bizarre behavior by at least twice banging her head on the police partition panel.

77. On information and belief, a mere eight minutes after the white Chevy Suburban collided with the apartment complex, Veronica arrived at the Brownsville City Jail.

10

78. On information and belief, after arriving at the Brownsville City Jail, Veronica made statements indicating she was contemplating suicide.

79. On information and belief, seven minutes after arriving at the Brownsville City Jail, Veronica was placed in a single padded cell.

80. On information and belief, at no point prior to being placed in the cell was Veronica examined by a medical doctor.

81. On information and belief, the Brownsville City Jail did not conduct a blood test on Veronica to check for changes in blood count, clotting factors, or other markers that may suggest internal bleeding.

82. On information and belief, the Brownsville City Jail did not conduct any imaging tests to help identify if Veronica was bleeding or injured.

83. On information and belief, the Brownsville City Jail provided no medical treatment for any of Veronica's injuries.

84. Even a basic medical screening would have resulted in the Brownsville City Jail seeking immediate medical attention for Veronica.

85. The Brownsville City Jail and its agents did not seek medical attention for Veronica.

86. On information and belief, approximately three hours and forty minutes after being placed in a cell, an employee of the Brownsville City Jail found Veronica unresponsive in her cell.

87. On information and belief, the Brownsville City Jail—for the first time—requested that Brownsville EMS come to check on Veronica.

88. Shockingly, (on information and belief) the first time Veronica was examined by a medical professional after being taken into the custody of the City of Brownsville was when she was declared dead in the jail.

89. The City of Brownsville caused Veronica's death.

90. Olvera caused Veronica's death.

91. Dominguez cause Veronica's death.

92. John Doe Defendants 1–15 caused Veronica's death.

### *Veronica's Death Was Painful*

93. The liver is surrounded by a thin membrane called the Glisson's capsule.

94. When the liver is injured, the capsule can become stretched or torn, leading to pain.

95. Lacerations of the liver can result in internal bleeding, which can cause pain due to the pressure buildup and irritation of the surrounding tissues.

96. Inflammation and irritation of nearby structures, such as the diaphragm and the lining of the abdominal cavity can also contribute to pain.

97. Because of these factors, it is widely understood that liver lacerations can cause extreme pain.

98. On information and belief, as a result of Veronica's liver lacerations, at least 22 fluid ounces of blood bled into her abdomen.

99. On information and belief, Veronica's death was very painful.

### IV.   CLAIMS FOR RELIEF

### FIRST CLAIM
**(Violation of the Fourteenth Amendment [42 U.S.C. § 1983]— As to Olvera in His Individual Capacity)**

100.   Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

101.   Olvera was acting as a Brownsville City Police officer when he arrived on the accident scene.

102.    As soon as Olvera placed Veronica in handcuffs, she was in the custody of the City of Brownsville.

103.    Once in the custody of the City of Brownsville, Veronica had a right to be free from punishment.

104.    Veronica had a right to be provided with basic human needs.

105.    Veronica had a right to be provided with medical care.

106.    Veronica had a right to be protected from harm.

107.    Olvera was aware of multiple facts from which an inference had to be drawn that Veronica faced a substantial risk of serious harm and death.

108.    On information and belief, when Olvera arrived on the scene of the accident, he was aware that Veronica had been in multiple auto collisions.

109.    On information and belief, when Olvera arrived, he observed that the white Chevy Suburban had collided with a brick apartment building and observed that the vehicle's airbags had deployed.

110.    On information and belief, when Olvera arrived, he observed at least some of the abrasions and contusions that Veronica had suffered as a result of the auto collisions.

111.    On information and belief, due to Veronica's painful liver lacerations and obvious abrasions and contusions, Olvera observed that Veronica was in tremendous pain.

112.    Based on his observations, Olvera drew the inference that Veronica faced a substantial risk of harm or death from the auto collision(s) she was involved in.

113.    Rather than acting on the inference that he drew—by taking Veronica to a hospital or calling for EMS—Olvera instead took Veronica directly to the Brownsville City Jail.

114.    Olvera was deliberately indifferent to Veronica's substantial risk of harm or death because he refused to seek medical treatment for her.

115.    Olvera did not call EMS.

116.    Olvera did not take Veronica to a hospital.

117.    Olvera's conduct demonstrates a wanton disregard for Veronica's serious medical needs.

118.    What's worse, on the car ride to the jail, Veronica exhibited bizarre behavior by at least twice banging her head on the police partition panel.

119.    Olvera was deliberately indifferent to Veronica's substantial risk of harm or death despite drawing an inference that Veronica was under the influence of drugs and/or alcohol.

120.    Olvera violated Veronica's Constitutional rights by exhibiting deliberate indifference to Veronica's serious medical needs.

121.    Olvera's failure to seek medical care for Veronica caused Veronica's suffering and death and damaged Ignacia, the Minor Children, and Veronica's estate.

122.    Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recover from Olvera:

    a.    Veronica's conscious physical pain, suffering, and mental anguish.

    b.    Veronica's loss of life and/or loss of enjoyment of life.

    c.    Veronica's funeral expenses.

    d.    Exemplary/punitive damages.

123.    Ignacia, in her individual capacity, and the Minor Children are also entitled to all remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia and the Minor Children seek such damages as a result of the wrongful death of Veronica.

Those damages were caused by Olvera. Olvera's actions caused the following damages suffered by Ignacia and the Minor Children, for which they seek compensation:

    a. Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    b. Expenses for Veronica's funeral.

    c. Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

    d. Future mental anguish and emotional distress suffered by Ignacia and the Minor Children resulting from and caused by Veronica's tragic death.

    e. Exemplary/punitive damages.

        i. Exemplary/punitive damages are appropriate in this case to deter and punish clear violations of constitutional rights.

124.    Olvera's actions and inaction showed a reckless and/or callous disregard of, or indifference to, Veronica's rights and safety.

125.    Ignacia, individually, on behalf of Veronica's estate, and as next friend of the Minor Children, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

126.    There can be no reasonable dispute that at the time Olvera failed to seek treatment for Veronica, the law was clearly established that pretrial detainees have a Fourteenth Amendment right to medical care. This general constitutional rule applied with obvious clarity such that Olvera was on notice that his failure to seek medical care for Veronica was unconstitutional.

127.    *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996) is clearly established law

that provided fair notice to Olvera that he had a duty to seek medical care for Veronica.

128.    A reasonable officer would have known that the Constitution required Olvera to take

some action to seek medical care for Veronica.

129.    Olvera is not entitled to qualified immunity.[1]

### SECOND CLAIM FOR RELIEF
**(Violation of the Fourteenth Amendment—[42 U.S.C. § 1983]— As to Dominguez in His Individual Capacity)**

130.    Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

Dominguez was acting as a Brownsville City Police officer when he arrived on the accident

scene.

---

[1] The defense of qualified immunity is, and should be held to be, a legally impermissible defense. In the alternative, it should be held to be a legally impermissible defense except as applied to state actors protected by immunity in 1871 when 42. U.S.C. § 1983 was enacted. Congress makes laws. Courts do not. However, the qualified immunity defense was invented by judges. When judges make law, they violate the Separation of Powers doctrine, and the Privileges and Immunities Clause of the United States Constitution. Plaintiffs respectfully make a good faith argument for the modification of existing law, such that the court-created doctrine of qualified immunity be abrogated or limited.

The Individual Defendants cannot show that they are entitled to qualified imunity. This should be the Individual Defendants' burden, if they choose to assert the alleged defense. Qualified immunity, as applied to persons not immunized under common or statutory law in 1871, is untethered to any cognizable legal mandate and is flatly in derogation of the plain meaning and language of Section 1983. *See Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1870-72 (2017) (Thomas, J., concurring) ("Our qualified immunity precedents instead represent precisely the sort of 'freewheeling policy choice' that we have previously disclaimed the power to make." "Until we shift the focus of our inquiry to whether immunity existed at common law, we will continue to substitute our own policy preferences for the mandates of Congress. In an appropriate case, we should reconsider our qualified immunity jurisprudence.").

Qualified immunity should have never been instituted as a defense, without any statutory, constitutional, or long-held common law foundation, and it is unworkable, unreasonable, and places too high a burden on plaintiffs who suffer violation of their constitutional rights. Joanna C. Schwartz, *The Case Against Qualified Immunity,* 93 Notre Dame L. Rev. 1797 (2018) (observing that qualified immunity has no basis in the common law, does not achieve intended policy goals, can render the Constitution "hollow," and cannot be justified as protection for governmental budgets). Plaintiffs include this allegation to assure that, if legally necessary, the qualified immunity abrogation or limitation issue has been preserved.

131.    As soon as Dominguez placed Veronica in handcuffs, she was in the custody of the City of Brownsville and had a right to be free from punishment and to be provided with basic human needs, such as medical care and protection from harm.

132.    Dominguez was aware of multiple facts from which an inference had to be drawn that Veronica faced a substantial risk of serious harm and death.

133.    On information and belief, when Dominguez arrived on the scene of the accident, he was aware that Veronica had been in multiple auto collisions.

134.    On information and belief, when Dominguez arrived, he observed that the white Chevy Suburban had collided with a brick apartment building and observed that the vehicle's airbags had deployed.

135.    On information and belief, when Dominguez arrived, he observed at least some of the abrasions and contusions that Veronica had suffered as a result of the auto collisions.

136.    On information and belief, due to Veronica's painful liver lacerations and obvious abrasions and contusions, Dominguez observed that Veronica was in tremendous pain.

137.    Based on his observations, Dominguez drew the inference that Veronica faced a substantial risk of harm or death from the auto collision she was involved in.

138.    Rather than acting on the inference that he drew—by calling for EMS—Dominguez instead assisted in placing Veronica in Olvera's police vehicle to be taken to the Brownsville City Jail.

139.    Dominguez was deliberately indifferent to Veronica's substantial risk of harm or death because he refused to seek medical treatment for her. This conduct demonstrates a wanton disregard for Veronica's serious medical needs.

140.    Dominguez violated Veronica's Constitutional rights by exhibiting deliberate indifference to Veronica's serious medical needs.

141.    Dominguez's failure to seek medical care for Veronica caused Veronica's suffering and death and damaged Plaintiffs.

142.    Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recovery from Dominguez:

    a.   Veronica's conscious physical pain, suffering, and mental anguish.

    b.   Veronica's loss of life and/or loss of enjoyment of life.

    c.   Veronica's funeral expenses.

    d.   Exemplary/punitive damages.

143.    Ignacia, in her individual capacity, and the Minor Children, are also entitled to all remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia and the Minor Children seek such damages as a result of the wrongful death of Veronica. Those damages were caused by Dominguez. Dominguez's actions caused the following damages suffered by Ignacia and the Minor Children, for which they seek compensation:

    a.   Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    b.   Expenses for Veronica's funeral.

    c.   Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

    d.   Future mental anguish and emotional distress suffered by Ignacia and the Minor Children resulting from and caused by Veronica's tragic death.

    e.   Exemplary/punitive damages.

Exemplary/punitive damages are appropriate in this case to deter and punish clear violations of constitutional rights.

144.    Dominguez's actions and inaction showed a reckless and/or callous disregard of, or indifference to, Veronica's rights and safety.

145.    Ignacia, individually, on behalf of Veronica's estate, and as next friend of the Minor Children, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. § § 1983 and 1988.

146.    There can be no reasonable dispute that at the time Dominguez failed to seek treatment for Veronica, the law was clearly established that pretrial detainees have a Fourteenth Amendment right to medical care. This general constitutional rule applied with obvious clarity such that Dominguez was on notice that his failure to seek medical care for Veronica was unconstitutional.

147.    *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996) is clearly established law that provided fair notice to Dominguez that he had a duty to seek medical care for Veronica.

148.    A reasonable officer would have known that the Constitution required Dominguez to take some action to seek medical care for Veronica.

149.    Dominguez is not entitled to qualified immunity.

### THIRD CLAIM FOR RELIEF
**(Violation of the Fourteenth Amendment—[42 U.S.C. § 1983]— As to Presently Unknown John Doe Defendants 1–15 in Their Individual Capacities)**

150.    Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

151.    Despite Plaintiffs' diligent efforts, Plaintiffs presently do not know the identities of the Brownsville City jailers who were present upon her arrival and who had the duty to monitor her.

19

152.    Thus, Plaintiffs bring the third claim against John Doe Defendants 1–15.

153.    On information and belief, after arriving at the Brownsville City Jail, Veronica made statements indicating she was contemplating suicide.

154.    The Texas Commission on Jail Standards also provides that observation of inmates "shall be performed at least every 30 minutes in areas where inmates known to be . . . potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined." 37 Tex. Admin. Code § 275.1.

155.    A previous version of the Jail Procedures Manual for the City of Brownsville made clear that the on-duty jailer was required to observe each inmate/prisoner at least every twenty minutes.

156.    A previous version of the Jail Procedures Manual for the City of Brownsville also suggested that observations of inmates/prisoners should be more frequent than every twenty minutes for those inmates/prisoners who were potentially suicidal.

157.    The Texas Commission on Jail Standards requires jails to administer a health screening upon the admission of an inmate to the facility.

158.    On information and belief, the Brownsville City Jail has previously relied on the Texas Commission on Jail Standards as a "base," from which to operate, and has previously tried to follow as many of the rules and regulations as closely as they could.

159.    Upon arrival at the Brownsville City Jail, Veronica had a right to be free from punishment and to be provided with basic human needs, such as medical care and protection from harm.

160.    On information and belief, John Doe Defendants 1–15 did not perform a health screening of Veronica upon her arrival. If they had performed an adequate health screening, John Doe Defendants 1–15 would have immediately sought medical attention for Veronica.

161.    Alternatively, John Doe Defendants 1–15 performed a health screening, observed Veronica's injuries, and chose to ignore her substantial need for medical attention.

162.    Under either scenario, John Doe Defendants 1–15 were deliberately indifferent to Veronica's substantial risk of harm. Either they observed her injuries and refused to seek medical treatment for her or they completely refused to perform a health screening that, on information and belief, was required upon Veronica's arrival.

163.    Additionally, on information and belief, the John Doe Defendants 1–15 did not perform observations at the regular intervals that they were required to. Had they performed these observations, they would have detected Veronica sooner and could have saved her life.

164.    John Doe Defendants 1–15 violated Veronica's Constitutional rights by exhibiting deliberate indifference to Veronica's serious medical needs.

165.    John Doe Defendant 1–15's failure to seek medical care for Veronica caused Veronica's suffering and death and damaged Plaintiffs.

166.    Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recovery from John Doe Defendants 1–15:

    a.   Veronica's conscious physical pain, suffering, and mental anguish.

    b.   Veronica's loss of life and/or loss of enjoyment of life.

    c.   Veronica's funeral expenses.

    d.   Exemplary/punitive damages.

167.   Ignacia, in her individual capacity, and the Minor Children, are also entitled to all

remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia

and the Minor Children seek such damages as a result of the wrongful death of Veronica.

Those damages were caused by John Doe Defendants 1–15. John Doe Defendants 1–15's

actions caused the following damages suffered by Ignacia and the Minor Children, for which

they seek compensation:

    a.   Loss of support, services, care, guidance, emotional support, and companionship that

        Ignacia and the Minor Children would have received from Veronica.

    b.   Expenses for Veronica's funeral.

    c.   Past mental anguish and emotional distress that Ignacia and the Minor Children

        suffered resulting from and caused by Veronica's tragic death.

    d.    Future mental anguish and emotional distress suffered by Ignacia and the Minor

        Children resulting from and caused by Veronica's tragic death.

    e.    Exemplary/punitive damages.

    f.   Exemplary/punitive damages are appropriate in this case to deter and punish clear

        violations of constitutional rights.

168.   Ignacia, individually, on behalf of Veronica's estate, and as next friend of the Minor

Children, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§

1983 and 1988.

169.   There can be no reasonable dispute that at the time John Doe Defendants 1–15 failed to

seek treatment for Veronica, the law was clearly established that pretrial detainees have a

Fourteenth Amendment right to medical care. This general constitutional rule applied with

obvious clarity such that John Doe Defendants 1–15 were on notice that their failure to seek medical care for Veronica was unconstitutional.

170.     A reasonable officer would have known that the Constitution required John Doe Defendants 1–15 to take some action to seek medical care for Veronica.

171.     John Doe Defendants 1–15 are not entitled to qualified immunity.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment—[42 U.S.C. § 1983]—Failure to Train/Supervise (Police Officers) As to the City of Brownsville)

172.     Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

173.     The City of Brownsville failed to provide adequate training and training procedures to Brownsville City Police officers regarding the need to seek medical care for detained individuals possessing obvious injuries from a car crash.

174.     If the City of Brownsville had adequately trained Olvera and Dominguez, they would have known to take Veronica to the hospital or to call her an EMS.

175.     The City of Brownsville was deliberately indifferent in adopting its inadequate training policy.

176.     The risk of constitutional violation was or should have been a highly predictable consequence of the City of Brownsville's training inadequacy.

177.     Indeed, Brownsville city policymakers know to a moral certainty that their officers will be required to attend to injured pretrial detainees. Alternatively, on information and belief, the Brownsville City Police officers have a widespread practice of not providing medical care to injured detained individuals.

178.     On information and belief, the City of Brownsville failed to train its officers concerning clear duties under the Fourteenth Amendment, including a detainee's right to be free from

23

punishment; a detainee's right to protection; and a detainee's right to be provided with basic human needs, such as medical care.

179.    The City of Brownsville's inadequate training policy directly caused Veronica's constitutional violations.

180.    The City of Brownsville's failure to train its officers and the inadequate training policies caused Veronica's suffering and death and damaged Plaintiffs.

181.    Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recovery from the City of Brownsville:

    a.  Veronica's conscious physical pain, suffering, and mental anguish.

    b.  Veronica's loss of life and/or loss of enjoyment of life.

    c.  Veronica's funeral expenses.

182.    Ignacia, in her individual capacity, and the Minor Children, are also entitled to all remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia and the Minor Children seek such damages as a result of the wrongful death of Veronica. Those damages were caused by the City of Brownsville. The City's policies, practices, and/or customs caused the following damages suffered by Ignacia and the Minor Children, for which they seek compensation:

    d.  Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    e.  Expenses for Veronica's funeral.

    f.  Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

g.   Future mental anguish and emotional distress suffered by Ignacia and the Minor

Children resulting from and caused by Veronica's tragic death.

183.   Moreover, Ignacia, individually, on behalf of Veronica's estate, and as next friend of the

Minor Children, seeks reasonable and necessary attorneys' fees available pursuant to 42

U.S.C. §§ 1983 and 1988.

### FIFTH CLAIM FOR RELIEF
**(Violation of the Fourteenth Amendment—[42 U.S.C. § 1983]—Failure to Train/Supervise (Jail Guards) As to the City of Brownsville)**

184.   Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

185.   On information and belief, the Brownsville City Jail may have a facially valid policy to

screen detained individuals for injuries.

186.   On information and belief, the Brownsville City Jail may have a facially valid policy to

check inmates at regularly scheduled intervals.

187.   But, on information and belief, the City of Brownsville has failed to train the jail guards

at the Brownsville City Jail to implement the Jail's policies in a constitutional manner.

188.   Thus, the City of Brownsville's training and training procedures were inadequate.

189.   If the John Doe Defendants 1-15 had been adequately trained, Veronica would have been

medically screened immediately upon her arrival and she would have immediately been sent

to a hospital or had an EMS called for her.

190.   If the John Doe Defendants 1-15 had been adequately trained, they would have checked

on Veronica every twenty minutes.

191.   The City of Brownsville was deliberately indifferent in failing to adequately train the jail

guards.

192.    The risk of constitutional violation was or should have been a highly predictable consequence of the City of Brownsville's training inadequacy.

193.    Indeed, Brownsville city policymakers know to a moral certainty that Brownsville City jail guards will be required to attend to injured pretrial detainees. Alternatively, on information and belief, the Brownsville City Police jail guards have a widespread practice of not seeking medical care for injured detained individuals.

194.    On information and belief, the City of Brownsville failed to train its jail guards concerning clear duties under the Fourteenth Amendment, including a detainee's right to be free from punishment; a detainee's right to protection; and a detainee's right to be provided with basic human needs, such as medical care.

195.    The City of Brownsville's inadequate training policy directly caused Veronica's constitutional violations.

196.    The City of Brownsville's failure to train its officers and the inadequate training policy caused Veronica's suffering and death and damaged Plaintiffs.

197.    Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recovery from the City of Brownsville:

    a.  Veronica's conscious physical pain, suffering, and mental anguish.

    b.  Veronica's loss of life and/or loss of enjoyment of life.

    c.  Veronica's funeral expenses.

198.    Ignacia, in her individual capacity, and the Minor Children, are also entitled to all remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia and the Minor Children seek such damages as a result of the wrongful death of Veronica. Those damages were caused by the City of Brownsville. The City's policies, practices, and/or

customs of inadequate training and training policy caused the following damages suffered by Ignacia and the Minor Children, for which they seek compensation:

    a.  Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    b.  Expenses for Veronica's funeral.

    c.  Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

    d.  Future mental anguish and emotional distress suffered by Ignacia and the Minor Children resulting from and caused by Veronica's tragic death.

199.    Moreover, Ignacia, individually, on behalf of Veronica's estate, and as next friend of the Minor Children, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. §§ 1983 and 1988.

## SIXTH CLAIM FOR RELIEF
### (Violation of the Fourteenth Amendment—[42 U.S.C. § 1983]—Failure to Promulgate Policies, or, Alternatively, Failure to Implement Existing Policy As to the City of Brownsville)

200.    Plaintiffs incorporate and reallege all paragraphs as though fully set forth herein.

201.    As discussed above, Dominguez and Olvera did not seek medical care for Veronica.

202.    As discussed above, John Doe Defendants 1-15 did not seek medical care for Veronica.

203.    On information and belief, Dominguez and Olvera's inaction was the result of the City of Brownsville's failure to implement a policy requiring responding officers to seek medical care of arrested individuals possessing injuries likely to cause serious injury or death. Alternatively, it was the result of the City of Brownsville's failure to adequately implement existing policy.

204.   On information and belief, John Doe Defendants 1-15's inaction was the result of the City of Brownsville's failure to adequately implement existing policy.

205.   Olvera, Dominguez, and John Doe Defendants 1-15 were subjectively indifferent to Veronica's basic human needs because they had subjective knowledge of a substantial risk of serious harm to Veronica and responded to that risk with deliberate indifference. They observed Veronica's injuries and refused to seek medical treatment.

206.   The City of Brownsville police officers had a widespread custom of failing to provide needed medical attention to detained individuals.

207.   The Brownsville City Jail had a widespread custom of jail guards violating  (1) the medical screening provision of the Brownsville City Jail and (2) the policy requiring inmates be checked at regularly scheduled intervals.

208.   The City's custom was to violate the screening provision of its Jail Procedures Manual. This custom was evidenced by the John Doe Defendants' failure to medically screen Veronica.

209.   The City's policies/customs, when taken together, interacted to cause the violation of Veronica's rights.

210.   The City of Brownsville was deliberately indifferent because it is obvious that the death of arrested persons (a Constitutional violation) was the likely consequence of not adopting a needed policy. Alternatively, the City of Brownsville was deliberately indifferent in failing to adequately implement an existing policy.

211.   On information and belief, the City of Brownsville was on notice of an omission in their policy that caused police officers/jail guards to violate citizens' constitutional rights. Alternatively, it was on notice of its failure to adequately implement an existing policy.

212.   The City of Brownsville's failure to promulgate a policy directly caused Veronica's constitutional violations. Alternatively, its failure to implement an existing policy caused Veronica's constitutional violations.

213.   Indeed, the City of Brownsville's failure to promulgate caused Veronica's suffering and death and damaged Plaintiffs.  Alternatively, the City's failure to implement an existing policy caused Veronica's suffering and death and damaged Plaintiffs.

214.   Veronica's estate and the Minor Children, as heirs, suffered the following damages, for which they are entitled to recovery from the City of Brownsville:

    a.   Veronica's conscious physical pain, suffering, and mental anguish.

    b.   Veronica's loss of life and/or loss of enjoyment of life.

    c.   Veronica's funeral expenses.

215. Ignacia, in her individual capacity, and the Minor Children, are also entitled to all remedies and damages available to each such person for 42 U.S.C. § 1983 claims. Ignacia and the Minor Children seek such damages as a result of the wrongful death of Veronica. Those damages were caused by the City of Brownsville. The City's policies, practices, and/or customs caused the following damages suffered by Ignacia and the Minor Children, for which they seek compensation:

    d.   Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    e.   Expenses for Veronica's funeral.

    f.   Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

g.  Future mental anguish and emotional distress suffered by Ignacia and the Minor

Children resulting from and caused by Veronica's tragic death.

216. Moreover, Ignacia, individually, on behalf of Veronica's estate, and as next friend of the

Minor Children, seeks reasonable and necessary attorneys' fees available pursuant to 42 U.S.C.

§§ 1983 and 1988.

### V.    PRAYER FOR RELIEF

For these reasons, Ignacia asks that Defendants be cited to appear and answer, and that

Ignacia, Veronica's estate, the Minor Children as wrongful death beneficiaries and heirs, have

judgment for damages against all Defendants, jointly and severally, as legally available and

applicable, for all damages referenced above and below in this pleading:

I.    Actual damages including, but not necessarily limited to:

    A.  Loss of support, services, care, guidance, emotional support, and companionship that Ignacia and the Minor Children would have received from Veronica.

    B.  Expenses for Veronica's funeral.

    C.  Past mental anguish and emotional distress that Ignacia and the Minor Children suffered resulting from and caused by Veronica's tragic death.

    D.  Future mental anguish and emotional distress suffered by Ignacia and the Minor Children resulting from and caused by Veronica's tragic death.

    E.  Veronica's conscious physical pain, suffering, and mental anguish.

    F.  Veronica's loss of life and/or loss of enjoyment of life.

II.   Exemplary/punitive damages from Individual Defendants (including Olvera, Dominguez, and John Doe Defendants 1–15).

III.    Reasonable and necessary attorneys' fees through trial and any appeals and other

appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988.

IV.    Court costs and all other recoverable costs.

V.    Prejudgment and post judgment interest at the highest allowable rates; and

VI.    All other relief, legal and equitable, general and special, to which Ignacia, Veronica's

estate, and the Minor Children as wrongful death beneficiaries and heirs, are entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial of all issues of fact and damages in this action triable

of right by a jury.

DATED: July 28, 2023.

Respectfully submitted.


LAW OFFICE OF NICOLAS C. WILDE LLC


By:    _N. Wilde_

Nicolas C. Wilde
Texas Bar Number: 24129400
Federal Bar Number: UT15768
Law Office of Nicolas C. Wilde LLC
32 West 200 South PMB # 123
Salt Lake City, Utah 84101
Telephone: (801) 949-3088
Email: nick@ncwildelaw.com


AMADOR LAW FIRM
Cesar E. Amador
Federal Bar No.: 3341377
SBN: 24105367
Cesar A. Amador
Federal Bar No.: 8966

31

SBN: 01136040
2406 Thor's Hammer Boulevard
Brownsville, Texas 78526
Telephone: 832.757.1210
Fax: 832.626.3036
Email: amador@amadorfirm.com
*Attorneys for Plaintiffs*