Nicolas C. Wilde
Federal Bar No.: UT15768
Texas Bar Number: 24129400
Law Office of Nicolas C. Wilde LLC
32 West 200 South PMB # 123
Salt Lake City, Utah 84101
Telephone: (801) 949-3088
Email: nick@ncwildelaw.com

Cesar E. Amador
Federal Bar No.: 3341377
Texas Bar Number: 24105367
Cesar A. Amador
Federal Bar No.: 8966
Texas Bar Number: 01136040
Amador Law Firm
2406 Thors Hammer Blvd.
Brownsville, Texas 78526
Telephone: (832-757-1210)
Email: amador@amadorfirm.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS: BROWNSVILLE DIVISION**

| | |
|---|---|
| Ignacia Carmona, individually, as the Independent Administrator (*pending court approval*) for the Estate of Veronica Peranez Carmona, and as the next friend for (1) G.H., (2) V.A.H., (3) R.P., (4) E.P., (5) R.C.P., (6) J.D.P., and (7) C.I.P.<br><br>Plaintiffs,<br><br>v.<br><br>The City of Brownsville; Jesus Olvera, *in His Individual and Official Capacity*; Pedro Dominguez, *in His Individual and Official Capacity*; and John Doe Defendants 1–15 | **Objection to Magistrate's Report and Recommendation as to Jesus Olvera and Pedro Dominguez's Motion to Dismiss, ECF No. 35**<br><br>Case No. 1:23-cv-84<br><br>District Judge Fernando Rodriguez Jr.<br><br>Magistrate Judge Karen Betancourt<br><br>***Oral Argument Requested*** |

Plaintiffs, through undersigned counsel, respectfully submit this Objection to United States Magistrate Judge Karen Betancourt's August 16, 2023, Report and Recommendation as to Jesus Olvera & Pedro Dominguez's Motion to Dismiss, (ECF No. 35). Plaintiffs humbly and respectfully request oral argument on their Objections.

## **Introduction**

This is a case about the death of a pretrial detainee, Veronica. Veronica was arrested by two Brownsville City Police Officers, Olvera and Dominguez, after she crashed her vehicle into multiple objects—finally hitting a brick apartment building. As a result of the auto collisions, Veronica's vehicle's airbags deployed. Veronica suffered visible contusions and abrasions and suffered lacerations to her liver.

When Olvera and Dominguez arrived on the scene just two minutes after Veronica's collision with the brick building, they observed Veronica's visible contusions and abrasions and were aware that Veronica has been involved in multiple auto collisions—including the collision with the brick apartment building that resulted in the airbag deploying. In their currently operative First Amended Complaint, Plaintiffs alleged that it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain based on her liver lacerations and her contusions/abrasions. Despite being aware that Veronica suffered significant trauma, and despite drawing the inference based on their training and experience that Veronica faced a substantial risk of harm of death from the traumatic collisions, Olvera and Dominguez did not seek medical care for Veronica. They did not call EMS for her. They did not take her to a hospital. Instead, they took her to the Brownsville City Jail.

Tragically, approximately three hours and forty minutes after being placed in a cell, Veronica was found unresponsive. She was declared dead shortly thereafter. As a result of Veronica's liver lacerations, at least 22 fluid ounces of blood bled into her abdomen.

In their First Amended Complaint, Plaintiffs cited *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996) as clearly established law that put Olvera and Dominguez on notice that they had a duty to seek medical care for Veronica. As in *Nerren*, here, Plaintiffs bring their claims against the officers who arrested Veronica. As in *Nerren*, Veronica was involved in an automobile accident. As in *Nerren*, Veronica was marred with abrasions as a result of the accident. As in *Nerren*, Veronica was in tremendous pain as a result of the accident. As in *Nerren*, the arresting officers had subjective knowledge that Veronica had been in an auto accident. As in *Nerren*, Veronica suffered lacerations to her liver as a result of the auto accident. In *Nerren*, the Fifth Circuit upheld the district court's denial of the arresting officers' motion for summary judgment.

Despite the remarkable similarity in facts between *Nerren* and this case, the Magistrate here granted the Individual Defendants' Motion to Dismiss. The Magistrate concluded that Plaintiffs' "citation to *Nerren* . . . is unavailing" because, in *Nerren*, the "officers knew that Nerren was in pain and wanted medical attention . . . ." (ECF No. 35 at 8.) The Magistrate's rejection of Plaintiffs' reliance on *Nerren* (1) ignored Plaintiffs' well-pleaded allegations that Olvera and Dominguez were aware Veronica was in pain; (2) misread the holding of *Nerren*—which focused on the fact that the officers were aware that the plaintiff had been involved in an automobile accident; and (3) failed to recognize that *Nerren* and four other cases that the Magistrate relied on were resolved on summary judgment—not on a motion to dismiss.

As explained below, the Court should SUSTAIN Plaintiffs' Objection because—with the greatest of respect to the Magistrate and her chambers—the Magistrate's analysis constitutes reversible error because the Magistrate (1) failed to identify the source of her authority to issue a

Report and Recommendation; (2) ignored well-pleaded facts relevant to whether Olvera and Dominguez were deliberately indifferent to Veronica's serious medical needs; (3) failed to correctly apply the required plausibility standard and failed to view the well-pleaded facts in the light most favorable to the Plaintiffs; (4) wrongly applied a more stringent standard for determining deliberate indifference than the Fifth Circuit requires; (5) misread the holding of *Nerren*; ignored Plaintiffs' citation to *Austin*; and ignored the fact that each of the four cases she relied on were resolved on summary judgment—not on a motion to dismiss; and (6) failed to recognize that the pending motion to dismiss is of a non-operative pleading.

Plaintiffs humbly and respectfully urge the Court to reject the Magistrate's analysis because doing so will constitute reversible error. This Court must correct the Magistrate's reversible error, apply the *Iqbal/Twombly* plausibility standard together with the correct standard for deliberate indifference, SUSTAIN Plaintiffs' Objections and DENY the Individual Defendants' Motion to Dismiss because Plaintiffs have adequately pleaded their claims against Olvera and Dominguez and easily meet their burden to defeat qualified immunity at this stage of the proceedings.

## Relevant Background

### Plaintiffs File Their Original Complaint

On June 2, 2023, the Plaintiffs filed their original Complaint. (ECF No. 1.) Relevant here, the Plaintiffs alleged that Olvera and Dominguez violated Veronica Peranez Carmona's Fourteenth Amendment rights under the United States Constitution when they were deliberately indifferent to Veronica's serious medical needs by failing to seek medical treatment for her despite having drawn the inference that Veronica faced a substantial risk of harm or death from auto collisions she was involved in. (ECF No. 1 at 4, 13, 16, Compl. ¶¶ 20, 109-114; 131-135.)

Individual Defendants File Their Motion to Dismiss the Original Complaint (Not the First Amended Complaint)

On June 29, 2023, Olvera and Dominguez filed a "Rule 12 Motion to Dismiss, Assertion of Qualified Immunity, and Request for Stay of Discovery." (ECF No. 16 at 1.) In that Motion, Olvera and Dominguez argued that "[t]he Fourteenth Amendment claim fails because the officers were not deliberately indifferent to a substantial risk or serious harm and did not violate a clearly established right or were unreasonable." (ECF No. 16 at 5.)

Plaintiffs File Their Opposition to the Individual Defendants' Motion

On July 20, 2023, the Plaintiffs filed their Opposition to Olvera and Dominguez' Motion, (ECF No. 21). In that Opposition, Plaintiffs argued that they had adequately pleaded that Olvera and Dominguez were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Veronica existed because they were aware that Veronica had undergone significant trauma as a result of the auto collisions she was involved in. (ECF No. 21 at 8–10; 12–13.) And Plaintiffs explained that Olvera and Dominguez actually drew the inference that Veronica faced a substantial risk of death and that they disregarded that risk.

Plaintiffs also explained that "the individual defendants are not entitled to qualified immunity." (ECF No. 21 at 15.) Plaintiffs argued that they "adequately alleged that Olvera and Dominguez violated Veronica's Fourteenth Amendment rights by exhibiting deliberate indifference to Veronica's serious medical needs." (ECF No. 21 at 16.) And Plaintiffs argued that "[t]he right in question was clearly established at the time of the officers' constitutional violation[s]." (ECF No. 21 at 16.) Plaintiffs pointed to the "'general constitutional rule already identified in the decisional law'" that "pretrial detainees have a Fourteenth Amendment right to medical care.'" (ECF No. 21 at 17 (citations omitted).) Plaintiffs argued that "[b]y pointing to the 'general constitutional rule already identified in the decisional law,'" they had "met their burden

to establish the inapplicability of Olvera and Dominguez' qualified immunity defense." (ECF No. 21 at 17.)

Notwithstanding having met their burden by pointing to the general constitutional rule already identified in the decisional law, Plaintiffs then "exceed[ed] their burden by demonstrating that *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996) is clearly established law that provided fair notice to Olvera and Dominguez that they had a duty to seek medical care for Veronica." (ECF No. 21 at 18.)

<u>The Magistrate—Prior to the Completion of Briefing on the Motion to Dismiss—Sua Sponte Forces Plaintiffs to Amend Their Complaint</u>

On July 21, 2023, the Magistrate Judge sua sponte entered an "Order on Possible Amendment," stating, in relevant part: "If no motion for leave to amend is filed, the Court will take it as a representation that the original complaint—Dkt. No 1—is the Plaintiffs' best-pled complaint and will address the motions to dismiss accordingly. The Court will view with disfavor any motions to amend filed in response to a report and recommendation on the motions to dismiss." (ECF No. 22 at 1–2.)

<u>The Magistrate Grants Leave to Amend and Allows Defendants to File a Reply to a Motion to Dismiss a Non-Operative Complaint</u>

On July 29, 2023, in response to the Magistrate Judge's sua sponte order, Plaintiffs filed a Motion for Leave to File First Amended Complaint. (ECF No. 25.) On July 31, 2023, the Magistrate Judge entered an order granting Plaintiffs' leave to file an Amended Complaint. In that Order, the Magistrate also held—despite the original Complaint no longer being operative—that "[t]he motions to dismiss filed by the Defendants remain pending before the Court." (ECF No. 26 at 2.) That same day, the First Amended Complaint was entered on the docket. (ECF No. 27.)

Relevant here, in the First Amended Complaint, Plaintiffs alleged:

> On information and belief, Olvera and Dominguez likely attended police academy training. During this training, they likely learned that they—when responding to car crashes—have a responsibility to act in good faith to provide emergency medical services to those occupants of vehicles involved in car crashes. At this police academy training, Olvera and Dominguez very likely learned that they should have conducted a head-to-toe assessment for people in Veronica's situation. And they would have very likely learned to recognize appropriate first aid measures for internal bleeding—including calling EMS or taking victims to a hospital where needed.

(ECF No. 27 at 6, FAC ¶ 43.) And they alleged "on information and belief, based on Veronica's liver lacerations and obvious abrasions and contusions, it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain." (ECF No. 27 at 7, FAC ¶ 57.) And they alleged "on information and belief, due to Veronica's painful liver lacerations and obvious abrasions and contusions, Olvera observed that Veronica was in tremendous pain." (ECF No. 27 at 13, FAC ¶ 110.) Further, they alleged "on information and belief, due to Veronica's painful liver lacerations and obvious abrasions and contusions, Dominguez observed that Veronica was in tremendous pain." (ECF No. 27 at 17, FAC ¶ 136.)

<u>The Individual Defendants File Their Reply and the Magistrate Enters a R&R Recommending that the Court Grant a Motion to Dismiss a Non-Operative Complaint</u>

On August 4, 2023, the Individual Defendants filed their Reply in support of their Motion to Dismiss. (ECF No. 29.)

On August 16, 2023, the Magistrate Judge entered a Report and Recommendation recommending "that the motion to dismiss filed by Jesus Olvera and Pedro Dominguez be granted for failure to state a claim upon which relief can be granted" and recommending that "Olvera and Dominguez are entitled to the protections of qualified immunity." (ECF No. 35 at 10.) The Magistrate, rather than framing the question before the Court as one of plausibility—*as required at this stage of the proceedings*–instead (improperly) sought to resolve the merits of

Plaintiffs' claims against the individual officers: "[t]he question before the Court is whether the failure to seek medical care for Carmona was deliberately indifferent to her medical need for care for internal bleeding which is the condition that caused her death." (ECF No. 35 at 7.) The Magistrate again mistakenly believed her role to be to resolve the merits of the dispute and again ignored the governing plausibility standard (and ignored the governing standard for deliberate indifference) when she stated: "the inquiry before the Court is not whether automobile accidents can cause massive internal bleeding (they can) but whether Olvera and Dominguez were subjectively aware of facts which demonstrated that Carmona was suffering from internal injuries (they were not)." (ECF No. 35 at 8.)

The Magistrate's conclusion demonstrates her misunderstanding of the plausibility standard and demonstrates her mistaken belief that her role was to resolve the merits of Plaintiffs' claims: "Because Olvera and Dominguez did not act with deliberate indifference, the Plaintiffs have failed to pled facts showing that they violated Carmona's constitutional rights." (ECF No. 35 at 10.)

## Argument

As explained below, Plaintiffs make six objections to the Magistrate's Report and Recommendation.

### I. Plaintiffs Object Because the Magistrate Judge Failed to Identify the Source of Her Authority to Issue the Report and Recommendation.

Plaintiffs object to the Report and Recommendation because the Magistrate Judge failed to identify the source of her authority to issue the Report and Recommendation. Absent a showing of the source of the Magistrate's authority to have issued the Report and Recommendation, Plaintiffs contend that the Magistrate is without statutory authority to have issued the R&R and respectfully request that the Court not consider the R&R at all.

A magistrate judge's authority to issue a Report and Recommendation is based on 28 U.S.C. § 636(b)(1)(B), which provides: "a [district] judge may . . . **designate** a magistrate judge . . . to submit to a [district] judge of the court proposed findings of fact and recommendation for the disposition, by a [district] judge of the court, of" among other motions, a motion to dismiss for failure to state a claim upon which relief can be granted. Further, Federal Rule of Civil Procedure 72 provides:

> A magistrate judge must promptly conduct the required proceedings **when assigned**, without the parties' consent, **to hear a pretrial matter dispositive of a claim** or defense or a prisoner petition challenging the conditions of confinement. A record must be made of all evidentiary proceedings and may, at the magistrate judge's discretion, be made of any other proceedings. The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact. The clerk must promptly mail a copy to each party.

Fed. R. Civ. P. 72(b)(1) (bold added).

Here, the Magistrate Judge failed to identify any order by the District Judge designating her to submit a recommendation to the District Judge. (*Compare* ECF No. 35 *with Teresa F. v. Kijakazi*, No. 4:21-CV-0459, 2023 WL 2169135, at *1 (S.D. Tex. Jan. 19, 2023) ("The district judge to whom this case is assigned referred Plaintiff's motion for attorney's fees. Order, ECF No. 24. A motion for attorney's fees is appropriate for report and recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1)(B)."); *see also Golshan D. v. Kijakazi*, No. 2:21-CV-00450, 2023 WL 1823520, at *1 n. 7 (D. Utah Jan. 23, 2023) ("On November 23, 2021, Chief Judge Robert J. Shelby referred this case to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B)." (citing Doc. No. 9.)). Further, a review of the docket demonstrates that the

District Judge in this case never entered an order referring the case or the motion to the Magistrate Judge.[1]

Because the Magistrate Judge never identified the basis of her authority to issue the Report and Recommendation—by pointing to a referral/designation by the assigned District Judge—Plaintiffs respectfully object to the R&R.

## II. Plaintiffs Object Because the Magistrate Ignored Well-Pleaded Facts Relevant to Whether Olvera and Dominguez Were Deliberately Indifferent to Veronica's Serious Medical Needs.

A comparison of Plaintiffs' First Amended Complaint and the Magistrate's Report and Recommendation demonstrates that the Magistrate ignored critical facts relevant to whether Plaintiffs pleaded facts to (1) allow the Court to draw a reasonable inference that the Individual Defendants are liable for the harm alleged and (2) defeat the qualified immunity defense with then minimal specificity necessary to satisfy *Twobly* and *Iqbal*.

In their First Amended Complaint, Plaintiffs alleged well-pleaded facts that Veronica's death was painful. (ECF No. 27 at 12, FAC ¶¶ 93–99.) But nowhere in the Magistrate's R&R did she acknowledge these well-pleaded facts. (*See* ECF No. 35.) Further, Plaintiffs alleged (on information and belief) that "based on Veronica's liver lacerations and obvious abrasions and contusions, it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain." (ECF No. 27 at 7, FAC ¶ 57; *see also* FAC ¶¶ 110 & 136.) But nowhere in the Magistrate's R&R did she acknowledge the allegations that it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain. (*See* ECF No. 35.)

[1] To be sure, the docket entry for ECF No. 15 provides: "Motions referred to Karen Betancourt." (ECF No. 15.) But this language is almost certainly autogenerated language that resulted from CM/ECF's Motion Referral Tracking—and very likely does not constitute a designation by the District Judge under 28 U.S.C. § 636(b)(1)(B).

Instead, the Magistrate implied—contrary to the well-pleaded allegations—that Olvera and Dominguez had no knowledge of Veronica's pain. (*See* ECF No. 35 at 8 ("For example, if Carmona had complained of abdominal pain, it would have put Olvera and Dominguez on notice that she was possibly suffering from unseen injuries.").) As explained below, the Magistrate's decision to assume that Olvera and Dominguez were not aware of Veronica's pain plainly violates the governing Rule 12(b)(6) standard, which required the Magistrate to view the well-pleaded allegations in the light most favorable to the Plaintiffs.

## III. Plaintiffs Object Because the Magistrate Failed to Correctly Apply the Required Plausibility Standard and Failed to View the Well-Pleaded Facts in the Light Most Favorable to the Plaintiffs.

Plaintiffs object to the Magistrate's recommendation because she failed to correctly apply the governing Rule 12(b)(6) standard. More specifically, the Magistrate erroneously attempted to resolve the merits of Plaintiffs' claim; failed to apply the required plausibility standard; and failed to view the well-pleaded facts in the light most favorable to the Plaintiffs. As explained below, adopting the Magistrate's R&R will constitute reversible error because the Magistrate's analysis so clearly eschews the governing plausibility standard.

The plausibility standard is well-established. "To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is **plausible** on its face.'" *Jackson v. CVS Pharmacy*, No. 4:22-CV-3166, 2023 WL 4373007, at *1 (S.D. Tex. July 6, 2023) (bold added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 662.

"The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims." *Alvarado v. Texas Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2020 WL 4677304, at *3 (W.D. Tex. Aug. 12, 2020). "Under this standard, the court 'construes the complaint liberally in favor of the plaintiff,' 'takes all facts pleaded in the complaint as true,' and considers whether 'with every doubt resolved on the [plaintiffs'] behalf, the complaint states any valid claim for relief.'" *Alexander v. Linthicum*, No. CV H-22-3749, 2023 WL 3938881, at *2 (S.D. Tex. June 9, 2023).

Importantly here, "[a] motion under Rule 12(b)(6) tests the formal sufficiency of the plaintiffs' statement of their claim for relief, *and cannot be used to resolve factual issues or the merits of the case*." *Eaton v. Aurora Loan Servs., L.L.C.*, No. 4:13CV172, 2013 WL 12407194, at *1 (E.D. Tex. Aug. 23, 2013) (emphasis added).

Also important here, "an assertion of qualified immunity in a defendant's . . . motion to dismiss *does not subject the complaint to a heightened pleading standard*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (emphasis added). Indeed, the "immunity-from-suit interest does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard of Rule 8." *Id*. "Rather, 'a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id*. (citation omitted). "That is, a plaintiff must plead qualified-immunity facts with the **minimal** specificity that would satisfy *Twombly* and *Iqbal*." *Id*. (bold added).

Here, the Magistrate plainly erred because she **(A)** failed to apply the required plausibility standard; **(B)** failed to view the well-pleaded facts in the light most favorable to Plaintiffs; and

**(C)** mistakenly believed her role was to resolve the merits of Plaintiffs' claims or to resolve factual issues.

**A. The Magistrate Failed to Apply the Required Plausibility Standard.**

Adoption of the Magistrate's R&R will constitute plain error. To demonstrate plain error, a plaintiff must show "(1) the district court erred; (2) the error was clear and obvious; and (3) the error affected her substantial rights." *United States v. Munoz*, No. 22-10451, 2023 WL 3582684, at *3 (5th Cir. May 22, 2023). Here, the Magistrate plainly erred because she failed to apply the governing plausibility standard.

The Magistrate's failure to apply the plausibility standard is apparent from her framing of the issue presented. The Magistrate stated: "[t]he question before the Court is whether the failure to seek medical care for [Veronica] was deliberately indifferent to her medical need for care for internal bleeding, which is the condition that caused her death." (ECF No. 35 at 7.) This statement demonstrates the Magistrate's misunderstanding of her role at this stage of the proceedings. If the Magistrate had correctly applied the plausibility standard, whose "focus is not on whether the plaintiff will ultimately prevail," *Texas Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2020 WL 4677304, at *3 (W.D. Tex. Aug. 12, 2020), she would have known that the question for the Court is ***not*** "whether [Olvera and Dominguez'] failure to seek medical care for [Veronica] was deliberately indifferent to her medical need . . . ." (ECF No. 35 at 7.) At this stage of the proceedings, the question is simply whether Plaintiffs plausibly pleaded facts that (1) allow the Court to draw the reasonable inference that Olvera and Dominguez are liable for the harm alleged and (2) defeat qualified immunity with the minimal specificity needed to satisfy *Twobly* and *Iqbal*.

Another of the Magistrate's statements confirms that she failed to correctly apply the governing plausibility standard. Relevant here, the Magistrate stated: "the inquiry before the Court is not whether automobile accidents can cause massive internal bleeding (they can) but whether Olvera and Dominguez were subjectively aware of facts which demonstrated that Carmona was suffering from internal injuries (they were not)." (ECF No. 35 at 8.) Again, the question for the Court is *not* whether Olvera and Dominguez were actually aware of facts that demonstrated that Veronica was suffering from internal injuries. The question for the Court at this stage of the proceedings is whether Plaintiffs pleaded facts that allow the Court to draw a reasonable inference that (1) Olvera and Dominguez were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Veronica existed and (2) they actually drew that inference. Because of the reasons argued in Plaintiffs' Opposition, (ECF No. 21 at 7–22) because Plaintiffs alleged that that Olvera and Dominguez learned during police academy training that they had "a responsibility to act in good faith to provide emergency medical services to those occupants of vehicles involved in car crashes," (ECF No. 27 at 6, FAC ¶ 43) and because Plaintiffs alleged that it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain (ECF No. 27 at 7, FAC ¶ 57), Plaintiffs have plausibly alleged that Olvera and Dominguez were deliberately indifferent to Veronica's serious medical needs.

It is apparent that the Magistrate failed to apply the governing plausibility standard. A de novo review of the First Amended Complaint demonstrates that Plaintiffs have pleaded "enough facts to state" claims for "relief that [are] plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should SUSTAIN Plaintiffs' objection, DENY the Individual Defendants' Motion to Dismiss, and allow this case to proceed to discovery.

### B. The Magistrate Failed to View the Well-Pleaded Facts in the Light Most Favorable to the Plaintiffs.

The Magistrate failed to view the facts in the light most favorable to the Plaintiffs when she concluded that "Olvera and Dominguez did not act with deliberate indifference . . . ." (ECF No. 35 at 10.) In reaching this conclusion, the Magistrate wrongly implied that Olvera and Dominguez were not aware that Veronica was in tremendous pain. (*See* ECF No. 35 at 8 ("For example, if Carmona had complained of abdominal pain, it would have put Olvera and Dominguez on notice that she was possibly suffering from unseen injuries.").) The Magistrate could only assume that Olvera and Dominguez were not aware that Veronica was in tremendous pain if she viewed the facts in the light most favorable *to the defendants*.

Because the Magistrate was required to view Plaintiffs' complaint "with every doubt resolved on the Plaintiffs' behalf," *Linthicum*, 2023 WL 3938881 at *2, and because Plaintiffs' First Amended Complaint contained well-pleaded allegations that Veronica suffered tremendous pain and it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain, the Magistrate should have instead concluded that there was a "reasonable likelihood that Veronica expressed to the officers she was in pain." (*See* ECF No. 21 at 20).

The Magistrate's failure to view the facts in the light most favorable to the Plaintiffs requires this Court to SUSTAIN Plaintiffs' objection and DENY the Individual Defendants' Motion to Dismiss.

### C. The Magistrate Mistakenly Believed Her Role Was to Find Facts and Resolve the Merits of Plaintiffs' Claims.

A close examination of the language of the R&R demonstrates that the Magistrate erroneously found facts and wrongly attempted to resolve the merits of Plaintiffs' claims against the Individual Defendants. The following statements demonstrate that the Magistrate found facts

and resolved Plaintiffs' claims rather than considered whether Plaintiffs' allegations were sufficient to state a claim:

- "But the inquiry before the Court is not whether automobile accidents can cause massive internal bleeding . . . but whether Olvera and Dominguez were subjectively aware of facts which demonstrated that Carmona was suffering from internal injuries (*they were not*). (ECF No. 35 at 8 (emphasis added).)

- "Olvera and Dominguez's lack of subjective knowledge that Carmona was suffering from internal injuries is dispositive of their right to qualified immunity." (ECF No. 35 at 8.)

- "Because *Olvera and Dominguez did not act with deliberate indifference*, the Plaintiffs have failed to plead facts showing that they violated Carmona's constitutional rights." (ECF No. 35 at 10 (emphasis added).)

As can be seen, the Magistrate *found* that Olvera and Dominguez lacked subjective knowledge that Carmona was suffering from internal injuries[2] and *concluded* that Olvera and Dominguez did not act with deliberate indifference. Because it is well-established that a Rule 12(b)(6) Motion "cannot be used to resolve the factual issues or the merits of the case," the Magistrate plainly erred when she found facts and concluded that the Individual Defendants did not act with deliberate indifference.

## IV. <u>**Plaintiffs Object Because the Magistrate Wrongly Applied a More Stringent Standard for Determining Deliberate Indifference than the Fifth Circuit Requires.**</u>

Plaintiffs object to the Magistrate's recommendation because she applied a more stringent standard for determining deliberate indifference than the Fifth Circuit requires. At the outset of her analysis on deliberate indifference, the Magistrate correctly identified the correct

[2] As explained below, not only is the Magistrate's R&R wrong for finding facts, the R&R also misstates the standard for deliberate indifference. Plaintiffs did not need to plausibly allege that Olvera and Dominguez were aware that Veronica was suffering from internal injuries, as the Magistrate suggests. They only needed to plausibly allege facts that (1) Olvera and Dominguez were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and (2) they actually drew the inference. Because Plaintiffs' allegations easily satisfy this standard, this Court must SUSTAIN the Plaintiffs' objection.

standard: "In order to show deliberate in difference, the plaintiff must [plausibly allege] that the defendant '(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference.'" (*See* ECF No. 35 at 6 (quoting *Sims v. Griffin*, 35 F.4th 945, 949–50 (5th Cir. 2022).) But rather than apply the correct standard, the Magistrate instead required the Plaintiffs to have demonstrated that "Olvera and Dominguez were subjectively aware of facts which demonstrated that [Veronica] was suffering from internal injuries . . . ." (ECF No. 35 at 8.)

Under well-established Fifth Circuit precedent, Plaintiffs were not required to plausibly allege that Olvera and Dominguez "were subjectively aware of facts which [actually] demonstrated that [Veronica] was suffering from internal injuries." (ECF No. 35 at 8.) Instead, Plaintiffs only had to plausibly allege that Olvera and Dominguez were (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference.

Plaintiffs plausibly alleged that Olvera and Dominguez were deliberately indifferent because they alleged that (1) Olvera and Dominguez were aware of the risk of internal bleeding to occupants of a vehicle involved in a car crash; (2) Olvera and Dominguez likely received police academy training teaching them that they had a responsibility to provide emergency medical services to occupants of vehicles involved in a car crash; (3) Olvera and Dominguez were aware that Veronica was involved in a traumatic auto collision that resulted in her vehicle's air bags deploying; (4) Olvera and Dominguez observed that Veronica had suffered abrasions and contusions as a result of the car crash; (5) Veronica suffered liver lacerations as a result of the car crash; (6) Veronica's liver lacerations were painful; (7) it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain; (8) neither Olvera nor Dominguez

called an EMS for Veronica nor took her to a hospital; and (9) even a layperson knows that car crashes pose a high degree of risk of internal bleeding to the occupants of the vehicle involved in a car crash. (*See* ECF No. 27; FAC ¶¶ 38; 42–43; 55–60; 93–99; 100–120; 130–140.)

Here, the Magistrate erroneously stated that "the inquiry before the Court is . . . whether Olvera and Dominguez were subjectively aware of facts which demonstrated that [Veronica] was suffering from internal injuries . . . ." (ECF No. 35 at 8.) This statement is erroneous because the inquiry for the Court was not whether Olvera and Dominguez were actually aware of facts that demonstrate that Veronica was suffering from internal injuries. The inquiry for the Court was simply whether Plaintiffs had alleged facts that allowed the Court to draw the reasonable inference that (1) Olvera and Dominguez were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Veronica existed and (2) they actually drew the inference. Because Plaintiffs plausibly alleged that Olvera and Dominguez were aware of facts from which the inference could be drawn that Veronica faced a substantial risk of internal bleeding, and because Plaintiffs plausibly alleged that Olvera and Dominguez drew that inference, the Court must SUSTAIN Plaintiffs' objection and DENY the Individual Defendants' Motion to Dismiss.

## V. Plaintiffs Object Because the Magistrate (A) Misread the Holding of *Nerren*; (B) Ignored Plaintiffs' Citation to Fifth Circuit Authority on Notable Factual Distinctions Being Permitted in Qualified Immunity Analysis; and (C) and Ignored the Fact that *Nerren* Was Decided on Summary Judgment.

Plaintiffs object to the Magistrate's recommendation as it relates to *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996). In their Opposition to the Individual Defendants' Motion to Dismiss (the original Complaint), Plaintiffs argued that "*Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996) is clearly established law that provided fair notice to Olvera

and Dominguez that they had a duty to seek medical care for Veronica." (ECF No. 21 at 18.)

Plaintiffs argued:

> The facts of *Nerren* are remarkably similar to the facts present here. As in *Nerren*, here, Plaintiffs bring their claims against (among others) "the officers who arrested" Veronica. (*Compare Nerren*, 86 F.3d at 470 *with* Compl. ¶¶ 98–140.) As in *Nerren*, Veronica was involved in an automobile accident. (*Compare Nerren*, 86 F.3d at 470 *with* Compl. ¶¶ 21–33.) As in *Nerren*, Veronica was marred with abrasions as a result of the accident. (*Compare Nerren*, 86 F.3d at 471 *with* Compl. ¶¶ 44–52.) As in *Nerren*, Veronica was in tremendous pain as a result of the accident. (*Compare Nerren*, 86 F.3d at 470 *with* Compl. ¶¶ 91–97.) As in *Nerren*, the arresting officers (here Olvera and Dominguez) had subjective knowledge that Veronica had been in an auto accident. (*Compare Nerren*, 86 F.3d at 471 *with* Compl. ¶¶ 53–58.) As in *Nerren*, Veronica suffered lacerations to her liver as a result of the auto accident. (*Compare Nerren*, 86 F.3d at 473 *with* Compl. ¶ 52.)
>
> By pointing to *Nerren*, Plaintiffs have identified on-point authority establishing that a police officer who arrests a detainee—who has recently been in a car crash and has obvious injuries—and fails to seek medical attention for the detainee, but instead takes them to a jail, is unconstitutional. Olvera and Dominguez violated clearly established law when they failed to seek medical attention for Veronica.

(ECF No. 21 at 19.) Plaintiffs also argued:

> Plaintiffs anticipate that the Individual Defendants will attempt to distinguish *Nerren* by arguing that Plaintiffs have not pleaded that Veronica asked the officers for medical care. This argument is unavailing because "**there can be 'notable factual distinctions between the precedents relied on so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights**." *Austin*, 2023 WL 4569562 at *7. Considering the many similarities between *Nerren* and the facts of this case—particularly the risk that liver lacerations pose to those who suffer a car crash—*Nerren* gave reasonable warnings to Olvera and Dominguez that their failure to seek medical attention for Veronica violated her constitutional rights.

(ECF No. 21 at 19–20 (bold added).) Plaintiffs also argued:

> Further, Veronica tragically passed away. Without the benefit of discovery, it is impossible to know what Veronica told the officers. But, considering that Plaintiffs alleged that "Veronica's death was very painful," (ECF No. 1 at 12, Compl. ¶ 97) and viewing the Complaint in the light most favorable to Plaintiffs, and "with every doubt resolved on [Plaintiffs'] behalf," *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009), there is a reasonable

> likelihood that Veronica expressed to the officers she was in pain. *Nerren* put Olvera and Dominguez on notice of the unlawfulness of their conduct.

(ECF No. 21 at 20.) Plaintiffs object because **(A)** the Magistrate misread *Nerren's* holding by placing too much emphasis on the fact that the plaintiff in that case asked for medical attention rather than on focusing on the fact that the officers were subjectively aware that the plaintiff had undergone significant trauma; **(B)** the Magistrate ignored Plaintiffs' argument that there can be notable factual distinctions between the precedents relied on; and **(C)** the Magistrate ignored that *Nerren* and each of the four cases she relied on were resolved on summary judgment—not on a motion to dismiss.

### A. The Magistrate Misread *Nerren's* Holding

The Magistrate stated that Plaintiffs' reliance on *Nerren* was "unavailing" because "[t]he fact that the officers knew that Nerren was in pain *and wanted medical attention* was probative evidence of their subjective knowledge of his serious medical needs." (ECF No. 35 at 8 (emphasis added).) Again, the Magistrate ignored Plaintiffs' well-pleaded allegations that Veronica was in pain. Further, the Magistrate misread *Nerren's* holding.

The significant fact in *Nerren* that made "detainee's need for care . . . obvious" was that "the officers *knew* [the detainee] 'had recently been involved in a multiple vehicle accident.'" *Williams v. Zachary*, 2022 WL 210518 at *4 (5th Cir. June 10, 2022); *see also id*. ("And Zachary, unlike the officers in *Nerren*, was not on notice that Brownlee had recently undergone significant trauma."). Here, as in *Nerren*, the officers were aware that Veronica had "recently undergone significant trauma" because (1) they knew she had been in a serious vehicle accident; (*See* ECF No. 27 at 7, FAC ¶ 55), (2) they observed Veronica's abrasions and contusions; (*See* ECF No. 27 at 13, FAC ¶¶ 110; 135), and (3) "based on Veronica's liver lacerations and obvious

abrasions and contusions, it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain." (*See* ECF No. 27 at 7, FAC ¶ 57.)

The Magistrate's focus on the plaintiff in *Nerren* "want[ing] medical attention" ignores a Fifth Circuit case that the Magistrate herself cited—*Rogers v. Jarrett*, 63 F.4th 971, 974 (5th Cir. 2023). In *Rogers*, the plaintiff was an inmate who was injured when "part of" a "barn's ceiling collapsed and him on the head." *Rogers*, 63 F. 4th at 974 (5th Cir. 2023). The plaintiff walked into one of the defendant's offices and "demanded 'to go to the infirmary.'" *Id*. From the defendant's perspective, the plaintiff "'looked fine'" because he only had a little bit of dust on him and his only visible injury was a scraped knee. Despite having "demanded" medical attention, the Fifth Circuit held that no reasonable jury could conclude that the defendant actually inferred that the plaintiff was at a substantial risk of serious harm. *Id*. at 976.

As *Rogers, Williams*, and *Nerren* demonstrate, knowledge that a detainee has undergone significant trauma is the critical fact in determining whether a defendant inferred that a plaintiff was at a substantial risk of serious harm—not, as the Magistrate incorrectly held, the fact that the plaintiff requested medical attention.

Here, because Plaintiffs alleged that Olvera and Dominguez had knowledge that Veronica had undergone significant trauma, *Nerren* controls. Plaintiffs have adequately alleged that (1) Olvera and Dominguez violated Veronica's Constitutional rights and (2) they have met their burden to defeat qualified immunity at this stage of the proceedings.

**B. The Magistrate Ignored Plaintiffs' Reliance on *Austin*.**

In their Opposition to the Individual Defendants' Motion to Dismiss (the Original Complaint), Plaintiffs, relying on *Austin v. City of Pasadena, Texas*, 74 F.4th 312 (5th Cir. 2023), argued that the minor factual distinctions between *Nerren* and this case were insignificant

because "there can be 'notable factual distinctions between the precedents relied on so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." (ECF No. 21 at 19 (quoting *Austin v. City of Pasadena, Texas*, 74 F.4th 312, 326 (5th Cir. 2023).) Nowhere in her analysis did the Magistrate address Plaintiffs' argument that, despite the minor factual distinctions between *Nerren* and this case, "*Nerren* gave reasonable warnings to Olvera and Dominguez that their failure to seek medical attention for Veronica violated her constitutional rights." (*See* ECF No. 35.)

At this stage of the proceedings, with all reasonable inferences drawn in favor of Plaintiffs, and with the leniency permitted by *Austin*, Plaintiffs adequately alleged that Olvera and Dominguez violated Veronica's Constitutional rights and adequately alleged facts to defeat Olvera and Dominguez' assertion of qualified immunity.

### C. The Magistrate Ignored that *Williams*, *Simmons*, *Arshad*, and *Rogers* Were All Resolved on Motions for Summary Judgment—Not Motions to Dismiss.

The Magistrate failed to recognize that each of the cases she relied on in support of her holding that "[t]he Fifth Circuit has consistently held that when a detainee's injuries are not visually apparent and the detainee's complaints are non-existent or do not reveal the full extent of the injuries, then the responding official's inaction does not amount to deliberate indifference" (ECF No. 35 at 8–9) were resolved on summary judgement—not on motions to dismiss:

1. *Williams v. Zachary*, 2022 WL 2101518 at *3 (5th Cir. June 10, 2022) ("**After some discovery**, the defendants moved for **summary judgment** under Federal Rule of Civil Procedure 56. The court held Zachary and Shankle were entitled to qualified immunity because, among other things, they had not violated a clearly established constitutional right.") (bold added).

2. *Simmons v. City of Columbus*, 425 F. App'x 282, 283 (5th Cir. 2011) ("The plaintiff appeals the district court's decision that the defendants were entitled to **summary judgment** on her § 1983 claim, which alleged that the defendants were deliberately indifferent to her brother's serious medical needs while he was a pretrial detainee in the

defendants' custody, in violation of the Fourteenth Amendment's Due Process Clause.”).

3. *Arshad ex rel. Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, at *1 (5th Cir. Mar. 9, 2009) (“The Plaintiffs-Appellants, Dr. Kaleem Arshad and Nadeem S. Arshad (‘the Arshads’), appeal from the district court’s grant of **summary judgment** in favor of the Defendants-Appellees, dismissing with prejudice the Arshads’ federal claims . . . .”) (bold added).

4. *Rogers v. Jarrett*, 63 F.4th 971, 974 (5th Cir. 2023) (“The district court granted **summary judgment** to Defendants based on qualified immunity. For the reasons below, we AFFIRM.”) (bold added).

It is very likely that in each of the cases the Magistrate relied on, the parties were entitled to the benefit of at least some discovery. *See Williams*, 2022 WL 2101518 at *3 (“After some discovery . . . .). Here, Plaintiffs argued that because “Veronica tragically passed away,” “it is impossible to know what Veronica told the officers” “[w]ithout the benefit of discovery.” (ECF No. 21 at 20.)

In failing to recognize that each of the cases she relied on were resolved on summary judgment, and in ignoring Plaintiffs’ arguments about the inability to plead what Veronica expressed to the officers prior to her death without the benefit of discovery, the Magistrate overlooked that “[t]he focus [of a motion to dismiss] is not on whether the plaintiff will ultimately prevail, but whether **that party should be permitted to present evidence** to support adequately asserted claims.” *Alvarado v. Texas Health & Hum. Servs. Comm'n*, No. 5:19-CV-0106-JKP, 2020 WL 4677304, at *3 (W.D. Tex. Aug. 12, 2020) (bold added).

Here, applying the correct standard under Rule 12(b)(6), Plaintiffs are entitled to seek and “present evidence to support” their adequately asserted claims against Olvera and Dominguez. *Alvarado*, 2020 WL 4677304, at *3. The Court should SUSTAIN Plaintiffs’ Objection, DENY the Individual Defendants’ Motion to Dismiss, and permit the Plaintiffs to conduct discovery.

## VI. Plaintiffs Object Because the Pending Motion to Dismiss Is As to a Non-Operative Complaint.

As discussed above, the Individual Defendants' pending Motion to Dismiss was filed before the First Amended Complaint was filed. Thus, the pending Motion to Dismiss is as to a non-operative pleading. The Magistrate's decision to allow the Defendants to file a reply in response to the Motion to Dismiss was procedurally improper. The Magistrate should have instead ordered the Individual Defendants to file a Motion to Dismiss that addressed the new factual allegations contained in the First Amended Complaint.

If the Court is not inclined to DENY the Individual Defendants' Motion to Dismiss, it should SUSTAIN Plaintiffs' objection and hold that the pending Motion to Dismiss, (ECF No. 16) is MOOT by virtue of the filing of the First Amended Complaint.

## Conclusion

The Magistrate's numerous errors are plain. Adoption of the Report and Recommendation will result in reversible error for the Court. Plaintiffs respectfully urge the Court to SUSTAIN their Objections, DENY the Individual Defendants' Motion to Dismiss, and allow this case to proceed to discovery. And Plaintiffs respectfully and humbly request the opportunity to present oral argument on their Objections.

Respectfully submitted this 29th of August, 2023,

LAW OFFICE OF NICOLAS C. WILDE LLC

By: */s/ Nicolas C. Wilde*

Nicolas C. Wilde
Texas Bar Number: 24129400
Federal Bar Number: UT15768
Law Office of Nicolas C. Wilde LLC
32 West 200 South PMB # 123
Salt Lake City, Utah 84101
Telephone: (801) 949-3088
Email: nick@ncwildelaw.com

AMADOR LAW FIRM
Cesar E. Amador
Federal Bar No.: 3341377
SBN: 24105367
Cesar A. Amador
Federal Bar No.: 8966
SBN: 01136040
2406 Thor's Hammer Boulevard
Brownsville, Texas 78526
Telephone: 832.757.1210
Fax: 832.626.3036
Email: amador@amadorfirm.com

*Attorneys for Plaintiffs*