United States District Court
Southern District of Texas

**ENTERED**

February 07, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IGNACIA CARMONA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:23-CV-084 |
| | § | |
| THE CITY OF BROWNSVILLE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

In June 2023, Plaintiff Ignacia Carmona filed this action on behalf of herself as the mother of Veronica Carmona, as the representative of Veronica's estate, and as the next friend of Veronica's children. She named as defendants the City of Brownsville, Brownsville Police Officers Jesus Olvera and Pedro Dominguez, and John Doe Officers 1-15. Plaintiffs allege that Officers Olvera and Dominguez failed to attend to Veronica's medical needs when they responded to a dispatch after she experienced a vehicular accident, and that the City failed to adequately train and supervise its police officers and jail staff to recognize the signs of internal injuries, resulting in Veronica's death while she was a pre-trial detainee in the Brownsville City Jail.

Shortly after Plaintiffs filed their lawsuit, the named Defendants filed motions to dismiss based on Federal Rule of Civil Procedure 12(b)(6). (City's Mot., Doc. 15; Officers' Mot., Doc. 16) Olvera and Dominguez also invoked the protections of qualified immunity. A few weeks later, Plaintiffs filed their First Amended Complaint (Doc. 27), adding factual allegations and withdrawing their claims in negligence and under Texas's Wrongful Death Act.

A Magistrate Judge considered the Motions to Dismiss as made against the First Amended Complaint and issued two Reports and Recommendations, in each recommending the dismissal of the challenged claims. (R&R-Officers' Mot., Doc. 35; R&R-City's Mot., Doc. 36) As Plaintiffs filed timely Objections (Docs. 38, 39) to both Reports and Recommendations, the Court reviews

the challenged portions of the Reports and Recommendations *de novo* and all other portions for clear error.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Based on the record and the applicable law, the Court concludes that the City, Dominguez, and Olvera are entitled to the relief they request.

## I.   Factual Allegations and Procedural History

### A. Factual Background[1]

During the early evening of June 17, 2021, Veronica Carmona was driving a white Chevy Suburban in Brownsville. (Am. Compl., Doc. 27, 4–5; Pls.' Attach. A, Doc. 20–2, 2)  According to Plaintiffs, she "may have been under the influence of alcohol and cocaine". (Am. Compl., Doc. 27, 4–5)

Veronica ran into a traffic sign, and then drove into a parking lot, where she crashed into an unoccupied vehicle. (*Id.*)  She left the parking lot and ran into a vehicle stopped at a traffic light. (*Id.*)  She then drove on the expressway, exited, and finally crashed into a brick apartment building. (*Id.*)  This final collision was "severe", causing the Suburban's airbags to deploy. (*Id.*)  During this entire sequence, the Brownsville Police Department received multiple emergency calls about a Chevy Suburban driving erratically. (*Id.*)

Brownsville Police Officers Olvera and Dominguez arrived at the apartment building approximately two minutes after the crash. (*Id.* at 7)  They were aware of the emergency calls concerning Veronica's other collisions and saw that the vehicle's airbags had deployed. (*Id.*)  They observed that she had several visible injuries, including abrasions on her right arm, a contusion on her right hand, abrasions on her right thigh, a laceration on her right heel, a contusion on her left thigh, and an abrasion on her left foot. (*Id.* at 6–7)  Olvera and Dominguez did not provide any medical attention to or call paramedics for Veronica and did not transport her to a hospital.

---

[1] For purposes of considering a motion to dismiss under Rule 12(b)(6), a court accepts a plaintiff's well-pleaded allegations as true but does not accept as true legal conclusions couched as factual allegations.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

(*Id.* at 8)  Instead, they drove her directly to the Brownsville City Jail. (*Id.*)  En route, Veronica exhibited "bizarre behavior", such as twice intentionally banging her head against the police partition panel. (*Id.* at 10)

After arriving at the jail, Veronica still received no medical treatment or screening, and she was placed in a single padded cell. (*Id.* at 10–11)  Several hours later, she was found unresponsive and declared dead shortly thereafter. (*Id.* at 11–12)  She died from lacerations to her liver resulting from the multiple vehicular accidents. (*Id.*)

During police academy training, Olvera and Dominguez "very likely learned that they should have conducted a head-to-toe assessment for people in Veronica's situation. And they would have very likely learned to recognize appropriate first aid measures for internal bleeding— including calling EMS or taking victims to a hospital where needed." (*Id.*)

**B. Procedural Background**

On June 2, 2023, Plaintiffs filed this lawsuit against Olvera, Dominguez, the City of Brownsville, and John Doe officers 1-15. (Compl., Doc. 1)  They allege that Olvera and Dominguez were deliberately indifferent to Veronica's serious medical needs by not seeking medical treatment for her, despite knowing she had been in multiple vehicular accidents and had visible injuries.  As to the City, they allege that it failed to adequately train and supervise its officers and jail officials, in violation of Veronica's Fourteenth Amendment rights.  They also allege that the City failed to promulgate policies or enforce existing policies as to proper medical care for detainees.

On June 29, Dominguez and Olvera timely filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Officers' Mot., Doc. 16)  Dominguez and Olvera assert the protections of qualified immunity, arguing that Plaintiffs have not pled facts demonstrating that they violated any of Veronica's constitutional rights, or that any violation of such rights was clearly established.

On the same day, the City timely filed its own Rule 12(b)(6) motion to dismiss. (City's Mot., Doc. 15)  As to the failure-to-train and/or supervise claims, the City argues that the Plaintiffs have failed to allege sufficient facts to demonstrate a constitutional violation, much less the existence of a custom or policy of constitutional violations. (*Id.*)

In their Response (Doc. 21) to the Officers' Motion, Plaintiffs argue that they alleged sufficient facts to show that Dominguez and Olvera violated Veronica's constitutional rights by acting with deliberate indifference to her serious medical needs, and that these rights were clearly established.  As to the City's Motion, Plaintiffs respond that they alleged sufficient facts regarding the City's inadequate policy regarding medical care for arrestees and its failure to adequately train and supervise its officers and jail officials. (Resp. to City's Mot., Doc. 20)  Plaintiffs contend that while they did not plead any prior incidents of City employees failing to provide medical care to detainees, their case falls within the "single incident exception" that can support municipal liability. (*Id.* at 6–7 (citing *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 717 (W.D. Tex. 2015)))

After filing their Responses, Plaintiffs also filed their First Amended Complaint, adding factual allegations and removing their claims in negligence and based on Texas's Wrongful Death Act. (Am. Compl., Doc. 27)

A Magistrate Judge considered the arguments within the pending motions to dismiss as made against the First Amended Complaint. (Order Granting Amendment, Doc. 26, 2; *see also* R&R-Officers' Mot., Doc. 35, 3; R&R-City's Mot., Doc. 36, 3)  The Magistrate Judge then issued separate Reports and Recommendations considering each of the motions to dismiss, and recommending in each Report and Recommendation that the court grant the respective motion. (R&R-Officers' Mot., Doc 35, 10; R&R-City's Mot., Doc. 36, 15)  Plaintiffs timely filed objections to each Report and Recommendation. (Objs. to R&R-Officers' Mot., Doc. 38; Objs. to R&R-City's Mot., Doc. 39)

## II.     Threshold Matters

In their objections, Plaintiffs present two threshold matters, although neither has merit.

First, Plaintiffs argue that the Magistrate Judge lacked the authority to issue a Report and Recommendation as to the Officers' Motion. (Objs. to R&R-Officers' Mot., Doc. 38, 8–9)  But contrary to Plaintiffs' position, 28 U.S.C. § 636(b)(1)(B) authorizes a District Court to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court" of pretrial motions, such as motions to dismiss. *See also S.D. Tex. L.R. 72* (authorizing magistrate judges of this District "to perform all of the duties allowed by law, including the provisions of 28 U.S.C. § 636").  Plaintiffs identify no authority requiring that the designation–or referral, as is the common terminology–be effectuated by a written Order, or that the parties consent to such a referral.[2]  In the present matter, at its inception, this Court designated the lawsuit to a Magistrate Judge, and the federal court's Case Management/Electronic Case Files system reflected the referral.  Likewise, when the City, Olvera, and Dominguez filed their respective motions to dismiss, the CM/ECF system noted the referral. (*See, e.g.,* Docket Entry for Doc. 16 ("Motion[] referred to [Magistrate Judge] Karen Betancourt."))  No party objected to the referral, and in any event, no party could object, as "the ultimate decision-making authority [is] retained by the district court." *Lineberry v. United States*, 436 F. App'x 293, 295 (5th Cir. 2010) (quoting *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989)).  "A party dissatisfied with a magistrate judge's decision may instead obtain relief by objecting to the magistrate judge's findings and recommendations, thereby compelling the district court to review his objections *de novo.*" *Donaldson v. Ducote*, 373 F.3d 622, 624 (5th Cir. 2004) (citing *United States v. Cooper*, 135 F.3d 960, 962–63 (5th Cir. 1998)).  Plaintiffs have availed themselves of this recourse and have no viable objection based on the Section 636(b) designation.

---

[2] In contrast, a designation under Section 636(c), which allows a Magistrate Judge to enter judgment, requires "the consent of the parties".

Second, Plaintiffs object to the Reports and Recommendations on the grounds that Olvera, Dominguez, and the City filed their motions as to Plaintiffs' Original Complaint, which no longer remains their live pleading. (Objs. to R&R-Officers' Mot., Doc. 38, 24; Objs. to R&R-City's Mot., Doc. 39, 12–13)  As a result, Plaintiffs continue, the Reports and Recommendations concern a "non-operative pleading."  In making this argument, Plaintiffs correctly note that they filed their First Amended Complaint after Olvera, Dominguez, and the City filed their respective motions to dismiss, and that these defendants based their motions on the allegations within the Original Complaint.  But the Plaintiffs incorrectly contend that this timing required the denial of the motions to dismiss as moot, with the defendants having to re-file their motions in light of the First Amended Complaint.  Ample caselaw supports the more efficient procedure that the Magistrate Judge elected: "'[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.' Rather '[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'" *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1476 (3d ed. updated Apr. 2018)).  Likewise, this Court considers the arguments within the pending motions to dismiss in light of the allegations within Plaintiffs' First Amended Complaint.

Having dispensed with these threshold arguments, the Court turns to the merits of the pending motions.

## III.   Applicable Standards

### A. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in

any action brought against a judicial officer for an act or omission taken in such officers judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). To prevail upon a Section 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *See Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

### B. Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper.[3] *Iqbal*, 556 U.S. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth

---

[3] In their objections to the Reports and Recommendations, Plaintiffs repeatedly contend that the Magistrate Judge applied an incorrect standard under Rule 12(b)(6). (*See, e.g.*, Objs. to R&R-Officers' Mot., Doc. 38, 14 ("Another of the [Magistrate Judge's] statements confirms that she failed to correctly apply the governing plausibility standard."); *see also, id.* at 4, 7–8, 11–14, 16–17, 23; Objs. to R&R-City's Mot., Doc. 39, 3, 5, 6–9) For example, they take issue with some of the wording within the Officers' Report and Recommendation, arguing that the Magistrate Judge applied a more stringent standard than the law supports. (*See, e.g.*, Objs. to R&R-Officers' Mot., Doc. 38, 16–18) The Court disagrees. As explained in this Order and Opinion, the Magistrate Judge in each Report and Recommendation correctly applied the law to the Plaintiffs' factual allegations. As a result, the Court overrules these objections.

in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020). These allegations "must be enough to raise a right to relief above the speculative level". *Twombly*, 550 U.S. at 555. "Conclusory allegations and unwarranted deductions of fact are not admitted as true". *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *see also Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Hous., Tex.*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018).

Dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 n.6 (5th Cir. 2004).

### C. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply the doctrine to provide "ample protection" to all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "One of the most salient benefits of qualified

immunity is protection from pre-trial discovery." *Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014).

If a defendant claims qualified immunity, the burden shifts to the plaintiff to establish that the defendant is not entitled to its protections. *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).

The two-part test for qualified immunity requires a court to determine: (1) whether the defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. *Pearson v. Callahan*, 555 U.S. 223 (2009). "Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion. It may not permit discovery against the immunity-asserting defendants before it rules on their defense." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). If "the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery. Similarly, where the pleadings are sufficient to overcome [qualified immunity], the district court *must* deny the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312 (emphasis in original).

"The first step in the qualified immunity analysis is to determine whether the plaintiff has alleged the violation of a clearly established federal constitutional (or federal statutory) right." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998)). "A right is 'clearly established' if it is 'one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Cope v. Cogdill*, 3 F.4th 198, 204–05 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). In determining whether the law was clearly established, a court cannot simply "define clearly established law at a high level of generality." *Mullenix*, 577

U.S. at 12.  Rather, the court must focus on "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original).  Plaintiffs satisfy this standard, and can therefore defeat qualified immunity, by "identifying a case in which an officer acting under similar circumstances was held to have violated" a plaintiff's constitutional rights and by "explaining why the case clearly proscribed the conduct of [those] officer[s]." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).

### D. Deliberate Indifference

Under the Fourteenth Amendment's Due Process Clause, state officials cannot act with "deliberate indifference" to a pretrial detainee's serious medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement").  Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  The plaintiff must show that the defendant "(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference." *Sims v. Griffin*, 35 F.4th 945, 949–50 (5th Cir. 2022).

Serious harm "isn't just any harm," but is reserved for situations where the need for medical care is "so apparent that even laymen would recognize that care is required." *Rogers v. Jarrett*, 63 F.4th 971, 976 (5th Cir. 2023).  The defendant must be subjectively aware of the severity of the plaintiff's medical needs.  For example, the official must have "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).  Negligence, no matter how regrettable, does not rise to the level of deliberate indifference. *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("[D]eliberate

indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm").

## IV.    City's Motion to Dismiss (Doc. 15)

Plaintiffs allege that the City failed to train or supervise its employees to give prompt medical care to arrestees, which led to Veronica's death.  In addition, they allege that the City failed to promulgate or enforce policies regarding proper medical care.  In its Motion to Dismiss, the City challenges each of these causes of action.

### A.  Failure to Train Olvera and Dominguez[4]

The Plaintiffs allege that the City failed to train Olvera and Dominguez regarding proper medical attention for arrestees who demonstrate an obvious need for such care.  To succeed on this cause of action, Plaintiffs must allege facts which, when accepted as true, show that "(1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 303 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)) (affirming dismissal of a failure-to-train claim against a municipality).

As to the inadequacies of a training program, Plaintiffs have pled no facts that the City failed to train its officers about the need to ensure that arrestees receive proper medical care.  In fact, Plaintiffs allege that Olvera and Dominguez received training concerning their "responsibility to act in good faith to provide emergency medical services to those occupants of vehicles involved in car crashes", and about their duty to conduct "a head-to-toe assessment for people in Veronica's situation." (Am. Compl., Doc. 27, ¶ 43)  Through these allegations, Plaintiffs claim that Olvera and Dominguez received proper training, but ignored it when arresting

---

[4] Plaintiffs title this cause of action as "Failure to Train/Supervise (Police Officers)", but the claim references only the City's alleged failure to train Dominguez and Olvera. (*See* Am. Compl., Doc. 27, 23–25)  To the extent that Plaintiffs intended to allege a claim for the alleged failure to supervise Dominguez and Olvera, they allege no facts in support of such a claim and, as a result, such a claim would be subject to dismissal.

Veronica.   Such allegations, however, even when construed in the light most favorable to Plaintiffs, cannot support their failure-to-train claim against the City.   Plaintiffs cannot simply point to Veronica's death as *ipso facto* proof of the inadequate training. *See Speck*, 606 F. App'x at 736 (explaining that a plaintiff cannot demand that a court "make the inference that a single alleged incident of misconduct means officers are inadequately trained").   "[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

Plaintiffs also fail to allege, aside from conclusory statements, that the City undertook any training program with deliberate indifference to the constitutional rights of the people that the police would encounter.   A plaintiff typically demonstrates such deliberate indifference by alleging a "pattern of similar constitutional violations by untrained employees." *Parker v. LeBlanc*, 73 F.4th 400, 402 (5th Cir. 2023); *see also Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005) (requiring "notice of a pattern of *similar* violations" to make a showing of deliberate indifference, clarifying that "[w]hile the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired").   In the present case, Plaintiffs' allegations about inadequate training do not satisfy this standard.   For example, they allege no facts that any other person has received inadequate medical care from City employees.   The absence of such allegations distinguishes Plaintiffs' claims from a case that they highlight, *Alanis-Mejia v. Cameron Cnty., Tex.*, 2023 WL 4109784, at *6 (S.D. Tex. May 17, 2023), *report and recommendation adopted*, 2023 WL 4110069 (S.D. Tex. June 21, 2023).   In *Alanis-Mejia*, the plaintiff alleged that he was the victim of an unprovoked assault by jail officials, identifying  in his allegations at least two recent prior incidents of jail officials applying excessive force. *Id*. at *2.   In that case, this Court concluded that the allegation of two prior incidents sufficed to plead a viable municipal liability claim against the county. *Id*. at *6.   In contrast, in the present case, Plaintiffs rest their municipal liability claim solely on one incident–i.e., Veronica's death.

As to the other avenues to establish liability, Plaintiffs present only conclusory allegations. For example, they allege that the City "had a widespread custom of failing to provide needed medical attention to detained individuals." (Am. Compl., Doc. 27, ¶ 206)  But they provide no factual allegations to support the conclusory statement.  They must allege specific incidents of alleged misconduct to others or to Veronica, and not merely rely on a generic statement that such incidents occurred.  Likewise, the involvement of a few officers and jail guards does not in itself suffice as a basis for a municipal liability claim.  *See, e.g., Randle v. Lockwood*, 2017 WL 892493, at *18 (W.D. Tex. Mar. 6, 2017) (finding that "numerous repeated incidents involving eighteen different county employees who failed to provide [plaintiff] access to adequate medical care over the span of more than a week" was enough to constitute multiple officials); *Westfall*, 903 F.3d at 553 (affirming dismissal of a failure-to-train claim against a city whose officers allegedly engaged in "a potentially illegal search and excessive force when bringing [plaintiff] to the ground", when "only three of the five officers present that morning were involved in potential violations of [plaintiff's] rights").

It is true that at times, one incident can suffice.  The Supreme Court has left open "the possibility that a plaintiff might succeed in carrying a failure to train claim without showing a pattern of constitutional violations." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997).  "[I]n a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.*  The Supreme Court has offered the example of a municipality that provided its officers with no training whatsoever on the use of deadly force. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, n.10 (1989).  If an untrained officer in that municipality used deadly force without justification, the municipality's decision to forego training would be so derelict that it would constitute deliberate indifference.

The Fifth Circuit has recognized the single-incident exception, although characterizing it as "extremely narrow, and as an exception to the pattern requirement, [] generally reserved for those cases in which the government actor was provided no training whatsoever." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312–13 (5th Cir. 2023) (internal citations omitted). A plaintiff must allege sufficient facts, which, when accepted as true, show "that the highly predictable consequence of a failure to train would result in the specific injury suffered" because the municipality "failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482–83 (5th Cir. 2021) (quoting *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010); *see also Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018)). Applying this stringent standard, the Fifth Circuit has rejected nearly every attempt to apply the exception in support of a claim based on an alleged inadequate training program. *See, e.g.*, *Anokwuru v. City of Hous.*, 990 F.3d 956, 966 (5th Cir. 2021) (affirming dismissal of a failure-to-train claim when plaintiff "points only to his own incident as proof of a policy of deliberate indifference"); *Hutcheson*, 994 F.3d at 483 (affirming the district court's ruling that "plaintiffs cannot avail themselves of [the single-incident] exception because they do not allege that there was 'no training whatsoever'").

In the present case, Plaintiffs' well-pled allegations depict the City as providing inadequate training, rather than no training at all. (*See* Am. Compl., Doc. 27, ¶¶ 175, 179–80, 188, 195–96, 198). Such allegations do not clear the high hurdle for application of the single-incident exception.

In their objections, Plaintiffs contend that they allege, in the alternative, that the City provided no training. (Objs. to R&R-City's Mot., Doc. 39, 3–7)  But even accepting that the First Amended Complaint contains such an allegation–and the Court finds Plaintiffs' construction of their own pleading strained–such an allegation would nevertheless fail.  The single-incident exception applies only when the "highly predictable consequence of a failure to train would result

in the specific injury suffered". *Hutcheson*, 994 F.3d at 482 (quoting *Valle*, 613 F.3d at 549).  Here, no allegation supports an inference that any training program would direct officers to provide medical care to an individual such as Veronica–i.e., a person involved in an accident resulting in injuries to her extremities that caused pain, but with no complaints or visible signs of injury that would suggest harm to internal organs.  Plaintiffs' allegations could succeed only if the Court accepted that a municipality must train its officers to provide a comprehensive medical examination for internal injuries to every arrestee involved in an accident that causes abrasions and contusions to her extremities.  The law does not support such a requirement.

Plaintiffs effectively ask the Court to infer that because Olvera and Dominguez allegedly failed Veronica, then the City must have failed in its training program.  But this theory is "at odds with the law against respondeat superior liability in section 1983 cases, which is a rule premised on the common-sense proposition that officer misconduct is often a result of the independent decisions of officers rather than direction from superiors." *Speck*, 606 F. App'x at 736.  Even if the Court accepted that Olvera's and Dominguez's conduct constituted a violation of Veronica's constitutional rights–and the Court reaches the opposite conclusion, see *infra* at Section V–their failure would not automatically establish a claim against the City.

### B.  Failure to Train Jail Officials[5]

Plaintiffs also allege that "the City of Brownsville has failed to train the jail guards" at the Brownsville City Jail "to implement the Jail's policies in a constitutional manner." (Am. Compl., Doc. 27, ¶ 187)  According to Plaintiffs, the City maintained "a facially valid policy" that required the screening of detained individuals for injuries and checking on them at regularly scheduled intervals. (Am. Compl., Doc. 27, ¶¶ 185–186)  Had the City adequately trained its police guards, Plaintiffs allege, they would have medically screened Veronica "immediately upon her arrival",

---

[5] Plaintiffs title this cause of action as the "Failure to Train/Supervise (Jail Guards)". (Am. Compl., Doc. 27, 25)  But the allegations within the claim make no reference to the failure to supervise the jail guards. (*See* Am. Compl., Doc. 27, ¶¶ 184–199)  As a result, any cause of action based on the alleged failure to supervise jail guards would be subject to dismissal.

which would have led them to "immediately" call a medic or send her to a hospital. (Am. Compl., Doc. 27, ¶¶ 189–190)  In addition, an adequate training program also would have required jail guards to "check[ ] on Veronica every twenty minutes". (Am. Compl., Doc. 27, ¶ 190)

As with their cause of action for the alleged failure to train police officers, Plaintiffs also fail to plead a viable claim against the City for its alleged failure to train jail guards.  Aside from conclusory allegations, Plaintiffs allege no facts concerning the City's training program for jail guards.  For example, they allege, "on information and belief", that the City's "jail guards have a widespread practice of not seeking medical care for injured detained individuals." (Am. Compl., Doc. 27, ¶ 193)  But they allege no specific prior incidents or other information to support this conclusory allegation.  Allowing Plaintiffs' claim to survive the City's Motion on such allegations would eviscerate Rule 12(b)(6), as any plaintiff could survive dismissal by simply reciting the requirements of the claim and generically alleging, "on information and belief", that the defendant engaged in the wrongful conduct.  The law does not permit such an approach.

Effectively, Plaintiffs rely on the single incident involving Veronica and ask that the Court infer the remaining factual allegations required to present a viable claim for the City's alleged failure to train its jail guards.  Although a single incident can support such a cause of action, as previously explained, Plaintiffs' allegations in this matter do not satisfy the requirements to apply the exception.  As a result, Plaintiffs' claim fails.

### C.  Failure to Promulgate

Plaintiffs also allege that the City's failure to promulgate proper policies regarding medical care for detainees caused Veronica's death.

While municipalities have an obligation not to adopt or maintain policies that create or condone constitutional violations, they have no affirmative obligation to adopt policies that prevent such violations. *Upshur Cnty., Tex.*, 245 F.3d at 462.  To present a viable claim under Section 1983 for the alleged failure to promulgate a policy, "the failure must be 'an intentional

choice' and amount to subjective deliberate indifference.  In other words, it must be 'obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992).  Based on those principles, the Constitution does not require that municipalities adopt policies that ensure the detection of all injuries, whether observable or not, in a detainee. For example, the Fifth Circuit has explained that the Constitution does not require "that a municipality train its officers to medically screen each pretrial detainee so that the officers will unerringly detect suicidal tendencies", because such an obligation would necessitate "an ability beyond that required of the average police officer by the due process clause". *Burns v. City of Galveston, Tex.*, 905 F.2d 100, 104 (5th Cir. 1990).  In the present case, Plaintiffs fail to allege facts allowing an inference that the City made an intentional choice that amounted to subjective deliberate indifference with respect to its adoption or implementation of a policy, or its failure to adopt a policy.

In their First Amended Complaint, Plaintiffs allege only that Veronica suffered visible injuries to her extremities and that the officers understood that she was in pain.  They allege no facts allowing an inference that an average police officer or jail guard should have suspected that she had also suffered an unseen internal injury to her liver.  As a result, Plaintiffs' cause of action against the City for its alleged failure to promulgate a policy is not one for which relief can be granted.

## V.   Officers' Motion to Dismiss (Doc. 16)

Plaintiffs allege that Olvera and Dominguez were deliberately indifferent to Veronica's serious medical needs when they responded to the vehicular accident.  As Olvera and Dominguez

have pled qualified immunity, Plaintiffs bear the burden of establishing that qualified immunity does not apply.

Based on the allegations in the First Amended Complaint, and accepting them as true for purposes of considering the Officers' Motion, the Court concludes that Olvera's and Dominguez's alleged conduct did not violate Veronica's constitutional rights, much less that any such violation was clearly established.  As a result, Olvera and Dominguez are entitled to the protections of qualified immunity.

Viewing the well-pled facts in the light most favorable to Plaintiffs, Olvera and Dominguez arrived at the scene of the final accident knowing that Veronica had been in several collisions earlier in the day.  They ascertained that ultimately, Veronica had crashed into a brick building, deploying the vehicle's airbags and inflicting Veronica with visible injuries to her extremities. They understood that she was in "tremendous pain."  And as they drove her to the jail, they witnessed that she "exhibited bizarre behavior by at least twice banging her head on the police partition panel." (Am. Compl., Doc. 27, ¶ 76)  At no time while at the accident scene or while taking Veronica to the Brownsville City Jail did either Olvera or Dominguez request medical care for her.

The first step in any Section 1983 suit is "to isolate the precise constitutional violation with which [the defendant] is charged."[6] *Baker*, 443 U.S. at 140.  Under the governing law, Olvera and Dominguez violated Veronica's constitutional rights if they acted with deliberate indifference, which requires, in the context of the present lawsuit, that they were aware of facts from which the inference could be drawn that a substantial risk existed that Veronica was suffering from severe internal injuries. *See Sims*, 35 F.4th at 949–50.  Veronica's need for medical care had to be so

---

[6] A plaintiff must also "demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).  No defendant challenges this element as to Dominguez or Olvera.

obvious that even an untrained layperson would know and understand that she required such care. *Rogers*, 63 F.4th at 976.

Plaintiffs argue that their allegations satisfy this standard because the risk of internal injuries from an automobile accident is so obvious that even a layperson would have thought it wise to have Veronica medically examined. (*See* Am. Compl., Doc. 27, ¶ 38)  The inquiry, however, is not whether automobile accidents can cause massive internal bleeding (some, but not all, do), but whether Plaintiffs allege facts allowing the inference that Olvera and Dominguez were subjectively aware that Veronica herself had suffered an internal injury.  For example, if Plaintiffs had alleged that Veronica had clutched her abdomen or complained of abdominal pain at the accident scene, such alleged conduct would have allowed an inference that Olvera and Dominguez were on notice that she was possibly suffering from unseen injuries.  But Plaintiffs allege no such facts, or any other that, when accepted as true, would allow the reasonable inference that either Olvera or Dominguez were or should have been subjectively aware that Veronica had suffered injuries beyond those to her arms and legs.

In their objections to the Report and Recommendation, Plaintiffs emphasize their allegation that "based on Veronica's liver lacerations and obvious abrasions and contusions, it would have been apparent to Olvera and Dominguez that Veronica was in tremendous pain." (Objs. to R&R-Officers' Mot., Doc. 38, 20–21 (quoting Am. Compl., Doc. 27, ¶ 57))  But this allegation is insufficient.  The lacerations to Veronica's liver would, of course, have been invisible to both Olvera and Dominguez.  And a non-observable injury does not permit an inference of an officer's subjective awareness of the injury.  As for the "obvious abrasions and contusions" to Veronica's arms, thighs, heel, and feet, these noticeable injuries support only the reasonable inference that the officers understood that Veronica was in pain, and perhaps "tremendous pain".  But they do not allow the inference that the accident had significantly injured one of her internal

organs.  Noticeable injuries to an individual's extremities do not reasonably lead to the inference of a significant internal injury to an organ within an individual's torso.

Plaintiffs rely heavily on *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996), but their reliance is misplaced.  In *Nerren*, the plaintiff was involved in an automobile accident and then fled the scene.  Several hours later, when the police encountered and arrested him, he informed officers that he was in pain and requested medical attention.  The officers ignored his request, telling him that because he "didn't worry about the people he had the automobile accident with", that they (the officers) were not going to worry about him. *Id.* at 470–71.  As it turned out, Nerren had suffered a torn liver.  Based on these allegations, the Fifth Circuit affirmed the denial of qualified immunity because "the Arresting Officers had subjective knowledge of Nerren's need of medical attention yet turned a deaf ear to his request". *Id.* at 473.  In contrast, in the present case, Plaintiffs plead no analogous facts.  They do not allege that Veronica requested medical care or in any way demonstrated pain beyond that caused by the injuries to her extremities.  They do not allege that either Olvera or Dominguez made any statements exhibiting callous disregard for Veronica's health.  Instead, Plaintiffs effectively argue that all automobile accidents "pose a high degree of risk of internal bleeding to the occupants" so as to render it a constitutional violation for police officers to not automatically seek medical care for the occupants, even in the absence of any indication that such care is required.  The law does not impose such an expansive duty.

The absence of any allegation that Olvera and Dominguez possessed subjective knowledge that Veronica was suffering from internal injuries is dispositive of their right to qualified immunity.  The Fifth Circuit has consistently concluded that when a plaintiff's injuries are not visually apparent and the injured person's complaints are non-existent or do not reveal the full extent of the injuries, then the responding official's inaction does not amount to deliberate indifference. *See, e.g., Dyer*, 964 F.3d at 380–81 (affirming dismissal based on qualified immunity as to paramedics who observed the deceased's "serious head injury" and "LSD-induced

behavior", but had no indication of an injury that would lead to death); *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (explaining that "the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned" as deliberate indifference).   As a result, Plaintiffs fail to allege facts, when accepted as true, demonstrating that Olvera and Dominguez violated Veronica's constitutional rights.  This finding defeats their causes of action against the two officers.

Moreover, the same analysis leads to the conclusion that the allegations fail to show that Olvera and Dominguez violated any of Veronica's rights that were clearly established at the time of the incident.  As previously noted, courts do not "define clearly established law at a high level of generality," but focus on the particular conduct at issue. *Mullenix*, 577 U.S. at 12.  Here, Plaintiffs identify no authority establishing that officers must seek medical care for an individual involved in a vehicle accident, even if no alleged facts allow the inference that the officers possessed subjective awareness that an occupant suffered an unseen internal injury.

## VI.   Conclusion

For these reasons, the Court **OVERRULES** Plaintiffs' objections, **ADOPTS** to the extent included in this Order and Opinion the Report and Recommendation as to Jesus Olvera & Pedro Dominguez's Motion to Dismiss (Doc. 35), and **ADOPTS** to the extent included in this Order and Opinion the Report and Recommendation as to the City of Brownsville's Motion to Dismiss (Doc. 36).  It is:

**ORDERED** that Defendants Jesus Olvera and Pedro Dominguez' Rule 12 Motion to Dismiss, Assertion of Qualified Immunity, and Request for Stay of Discovery (Doc. 16) is **GRANTED**;

**ORDERED** that Defendant City of Brownsville, Texas' Rule 12 Motion to Dismiss for Failure to State a Claim for Relief (Doc. 15) is **GRANTED**; and

**ORDERED** that Plaintiffs' causes of action against Defendants Jesus Olvera, Pedro Dominguez, and the City of Brownsville are **DISMISSED WITH PREJUDICE**.

Signed on February 6, 2024.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge